**David SHERK and Kathleen Masulis, Plaintiffs,**

v.

**Peter LIEBACK and Pittston Area School District, Defendants.**

**Civil A. No. 93–1611.**

United States District Court, M.D. Pennsylvania.

Nov. 22, 1995.

Barry Dyller, Wilkes–Barre, PA, for Plaintiffs.

Jeffrey H. Quinn, Thomas J. Duffy, P.C., Philadelphia, PA, for Defendants.

## *MEMORANDUM*

DURKIN, United States Magistrate Judge.

Before the court is plaintiffs' motion for an award of attorney's fees and costs. (Doc. No. 41).

By way of background, plaintiff Kathleen Masulis, the mother of David Sherk, and David Sherk brought this action pursuant to 42 U.S.C. § 1983 alleging that Peter Lieback, a security guard employed by defendant Pittston Area School District, committed an assault and battery against David Sherk at a school dance held on September 24, 1993, and that defendant Pittston Area School Dis-

trict had a policy or custom of permitting or approving violence committed against students in its schools.

■ In an action under § 1983, the doctrine of *respondeat superior* does not apply. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Thus, the "policy or custom" allegations constituted an attempt by plaintiffs to show that the school district was directly involved in the alleged violations of Sherk's rights.

The school district moved for summary judgment on the "policy or custom" allegations in the complaint on the basis that extensive discovery had produced no evidence that the school district had a policy or custom of permitting or approving violence committed against students in its schools. In their opposing brief and other documents, plaintiffs, in support of the "policy or custom" issue, were able to point only to an affidavit of Kucharski, noting that on one occasion, Lieback engaged in assaultive or threatening behavior toward Kucharski. The magistrate judge held that the school district was entitled to summary judgment on the "policy or custom" issue since that one isolated incident involving Kucharski was the only incident on which the plaintiff relied and under existing case law, would not indicate that there is a triable issue of fact with respect to the question "policy or custom."

The magistrate judge noted however that in their brief, plaintiffs argued that David Sherk was also proceeding directly against the school district on the basis that the school district violated David Sherk's due process rights by deciding to suspend him for three days before giving him a meaningful opportunity to be heard. The magistrate judge noted that in their reply brief, defendants did not address the due process argument. The magistrate judge noted however that in the complaint, at least in the specific counts, plaintiffs did not appear to contend that Sherk did not receive the process that he was due and indeed it would appear from documentation submitted in connection with the motion for summary judgment that

David Sherk was afforded all the process that he was due. The magistrate judge noted however that since defendants had not addressed the plaintiffs' "lack of meaningful hearing argument", the court would not address this issue, if it existed, until such time as it may be addressed by both parties.

The defendants then filed a supplemental motion for summary judgment in which they addressed the due process claim as it relates to the denial of the meaningful hearing. The defendants noted that it agreed with the magistrate judge's observations in the decision on the prior motion for summary judgment that the complaint did not appear to allege that David Sherk did not receive a "meaningful hearing" or "meaningful opportunity to be heard." Defendants stated that it was for this reason that plaintiffs' prior argument along this line was not addressed. In any event, the defendants then addressed the due process claim.

On the basis of the submissions of the parties, the magistrate judge held that David Sherk received the process that he was due and as a matter of law the defendants were entitled to summary judgment on the due process issue. An order was entered therefore granting summary judgment on the due process issue.

The net effect of the granting of the two motions for summary judgment was to absolve the Pittston Area School District from direct liability in this case on the only two theories on which liability was pressed, that is, that the school district, through a "policy or custom" was directly involved in any denial of David Sherk's rights and that the school district denied him due process by not affording him a meaningful opportunity to be heard. Thus, at that point, the case was basically reduced to an action by plaintiffs against defendant Lieback for the incident which occurred at the dance.[1]

In that connection, documents submitted in connection with the prior motions indicated that during the course of the dance, the students engaged in a dance or procedure

---

1. As hereinafter discussed at this point, the school district remained in this case, if at all, under the doctrine of *respondeat superior* on the *state law* claims included in Counts III through V of the complaint.

called "moshing" or "mauching." The dance apparently is performed by some of the participants forming a circle called a pit and other participants jumping in and out of the circle and dancing around the circle. The dance entails considerable jumping. Some of the students were dancing on the cafeteria tables.

Lieback, a school security guard, attempted to stop the students from performing this dance while one Doran, a police officer moonlighting as a security guard at the dance, went to get the students off the tables. While Lieback was attempting to stop the dancing and was talking to one student who "was jumping around too much", Sherk either jumped up in the air and hit Lieback in the shoulder, or fell into Lieback or danced backward into Lieback while Lieback was talking to another student. It was at that point that Lieback allegedly turned around and kneed David Sherk and dragged him by the neck to an outside door and turned him over to Doran. While Lieback was dragging David Sherk to the door, another student, Jonathan Eber, grabbed Lieback's arm. Thus, while it appeared that the parties may be disputing whether Sherk jumped on Lieback or merely bumped into him and whether Lieback over-reacted, it appeared that Lieback's actions would have to be judged in the "atmosphere" created by the moshing and the attempts to bring things under control.

After the whole incident was concluded— and the matter was reviewed that same evening in the presence of Sherk's mother at the principal's office—Sherk's deposition indicated that Sherk left the school and drove a friend home and then returned to his own house. In the meantime, his uncle had suggested to his mother that he go to the hospital. He went to the emergency room sometime after midnight. They took some photographs to document the scratches and put Betadine ointment on a scraped area on his neck. He stayed for 40 minutes and was given no other medications and no pain killers. There was no neck pain other than the scratches being caused to sting from the ointment. He may have had a bruise on his left shoulder which he described as "slight

minor." He never had any pain or soreness in the neck afterwards. Evidence of marks and scratches were gone completely in nine days. He missed no school because of any injury; missed no employment in his part-time job. He does not link any physical limitation or limitations on his activities to this incident.

After summary judgment was granted in favor of the school district on the "policy or custom" and due process issues, defendant Peter Lieback then moved for summary judgment based primarily on Sherk's own deposition. He argued that since David Sherk suffered little or no injury and considering the circumstances which existed at the dance at the time of the incident, the incident did not rise to the point of a constitutional violation and that in any event, under existing case law, reasonable minds could differ as to whether there was a use of excessive force and therefore Lieback was entitled to qualified immunity.

■ In a phone conference, the plaintiffs' counsel objected to what he considered a "piecemeal" filing of summary judgment motions. It was pointed out however that because a motion for summary judgment mirrors the standard for a directed verdict (now called a motion for judgment as a matter of law), *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the contentions advanced in support of defendants' most recent motion for summary judgment would have to be heard sometime, either before trial or at the trial, and that it would appear to be better to address these matters before trial. In any event, the parties agreed that a settlement conference would be in order and that the plaintiff could defer a response to defendants' most recent motion for summary judgment pending the outcome of the conference.

Following the conference, the parties in March 1995 agreed to a settlement of $8,000.00 to be paid to the plaintiffs. The parties also agreed to negotiate with respect to the question of attorney's fees and reimbursement for costs advanced. The negotiations were not fruitful with the result that the plaintiffs filed the motion for attorney's

fees and costs which are now before this court.

Before discussing the matter of a fee, several observations appear to be in order. The incident in question involved an altercation between a teenager and an adult school district employee who was charged with the duty of maintaining order at a high school dance. There was little or no physical injury. Yet, the attorney's fees sought in this case (over $34,000.00 for the case in chief) are over four times the amount which was eventually paid to the plaintiffs themselves. This points up the desirability in a case of this type of early investigation to determine whether some form of settlement can be achieved without the need for full blown discovery and related counsel fees.

Each party to this action appears to point a finger at the other side with respect to the matter of who impeded settlement. Counsel for the plaintiff states in an affidavit that before suit was brought, he attempted to settle the case with the school district for the sum of $1,000.00 payable to the plaintiffs and a reasonable attorney fee in relation to the time then expended. Plaintiffs' counsel states that he was in effect told to sue, and the action was filed October 20, 1993. Defendants' counsel counters that he was not in the case at that time could not confirm or deny this. However, defendants' counsel states that when the solicitor for the school district was first contacted about this action, the solicitor indicated that plaintiffs' counsel viewed it in exaggerated terms as a "million dollar case." Plaintiffs' counsel denies this, and indicates that when it was clear to him that the school district was protecting Lieback at all costs, he stated the "next case [involving Lieback] will be a million dollar case. May God direct that plaintiff to me."

In any event, in March 1994, after depositions had been taken, plaintiffs' counsel, in response to a request from defense counsel that a demand be made, made a demand of $50,000.00 [2] plus attorney's fees. Defense counsel states that based on plaintiffs' counsels' billing records, the demand at that time would have been in the neighborhood of $70,000.00 including fees. Defense counsel states that since there appeared to be substantial liability questions in view of the almost nonexistent injuries, on April 29, 1994, or about eight months after this action was filed, defense counsel made an offer of $7,000.00 which plaintiffs' counsel rejected as an "insult" even though this was close to the $8,000.00 settlement ultimately agreed upon. (Doc. No. 45, Exh. C & D). Plaintiffs' counsel responds that the $7,000.00 was to be divided between his clients and him, even though his fees and costs at that time had exceeded $20,000.00. *Id.* Defense counsel replies that in rejecting the offer, plaintiffs' counsel advised that his fee was not negotiable and that if defendants wished to settle with his client, he would seek his *full fee* from the court.

Thus, as can be seen each side is accusing the other of blocking an early settlement in this case. The fee question has therefore become another instance of being the major issue in the case.

By letter dated April 13, 1995, plaintiffs' counsel responded, confirming the agreement as to the $8,000.00 payable to his client. Even though it was contemplated that *negotiations* would continue on the fee question, plaintiffs' counsel requested payment of his *total* bill for the time expended, and costs, amounting to just over $35,000.00. Since at the settlement conference on the underlying claim he had previously agreed too an outside cap on his fee of $34,000.00, he reduced that demand by $1,000.00. Defendants' counsel therefore responded with a counter offer of approximately $10,000.00 for fees and costs which counsel felt reflected a proper reduction for plaintiffs' losing stance on the summary judgment motions, the degree of success achieved and compromise. By letter

2. Plaintiff states that in demanding the $50,000.00 "as anyone involved in litigation, or in any negotiation knows, what one requests in a negotiation is rarely one actually expects or desires. In general, plaintiffs demand sums that they know are inflated, and defendants insist the case will be dismissed and the plaintiffs will be sanctioned for bringing a frivolous suit. Plaintiffs' $50,000.00 demand was just such posturing. It was a step at achieving the ultimate end of money damages for the plaintiff. To demand too little would have achieved a lesser result than was actually achieved, and plaintiff would have been poorly served."

dated May 10, 1995, plaintiffs' counsel rejected this counter offer as an "extreme act of bad faith", stated that he regretted "capping" his fee proposal and would file a fee petition with the court which would include fees for preparing the petition. As hereinafter noted, the amount of fees claimed for preparing the fee petition are substantial, to say the least.

Turning now to the question of the fee, in their motion, plaintiffs initially sought fees in the amount of $37,565.75 and $2,079.56 in costs incurred. The fees are broken down as follows: $32,593.25 for 186.25 hours expended by Barry H. Dyller, Esquire in the course of the litigation, multiplied by his hourly rate of $175.00; $637.50 for 8.50 hours expended by Michael Brandley, a third year law student, who assisted counsel, multiplied by an hourly rate of $75.00; $3,106.25 for 17.75 hours expended by Barry H. Dyller, Esquire preparing the fee petition and related documentation, multiplied by $175.00 per hour; and $1,866.25 for 24.75 hours expended by Michael Brandley in work on the fee petition and related documentation, multiplied by $75.00 per hour. In reply to plaintiffs' opposition to the amounts sought, Attorney Dyller indicates that he expended an additional 14 hours of time at $175.00 an hour or $2,450.00 in preparing a reply to defendants' response and additional $6.00 in costs.

The total amount sought therefore is as follows:

| | BARRY H. DYLLER, Esq. | MICHAEL BRANDLEY, Law Student | COSTS | TOTAL |
|---|---|---|---|---|
| Case in Chief | $32,593.25 (186.25 hrs.) | $ 637.50 (8.5 hrs.) | $2,079.56 | $35,310.31 |
| Prepare fee Petition | $ 3,106.25 (17.75 hrs.) | $1,866.25 (24.75 hrs.) | | $ 4,972.50 |
| Reply to Response— Fee Petition | $ 2,450.00 (14.00 hrs.) | | $ 6.00 | $ 2,456.00 |
| | $38,149.50 | $2,503.75 | $2,085.56 | $42,738.81 |

Defendants do not dispute that plaintiff is the prevailing party, at least with respect to the claim against Lieback. Further, defendants do not dispute the hourly rates claimed by plaintiffs' counsel and his legal assistant nor the number of hours expended in connection with the case in chief.

Defendants argue however that the "lodestar" should be reduced on the basis that plaintiffs were unsuccessful on two of the three basic claims in this action and had only very limited success with respect to the third claim. Defendants suggest several "approaches" to reducing the amount of fees and costs for the case in chief. Relying on *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the defendants argue that under this *"Farrar"* approach, which focuses on overall "success", since plaintiffs' counsel's only written demand for settlement was $50,000.00 for his client and since he ultimately secured for his client only $8,000.00 or 16% of what he had originally demanded, he should be awarded only 16% of the total fees and costs claimed for the case in chief or $5,649.64 which represents about 70% of the total recovery secured for his client.

Defendants argue that a second approach would be that applied in *Planned Parenthood of SEPA v. Casey*, 869 F.Supp. 1190 (E.D.Pa. 1994). Defendants argue that under this approach, there is a total reduction of hours that could be specifically related to individual losing claims. Defendants argue that in *Planned Parenthood*, the court determined that plaintiffs had achieved some degree of success on only two of the six points which

would equate to a lack of success of just over 66%. The court then applied a 60% reduction to the total or full work on the case. Defendants argue that in the instant case, two of the three major claims presented by plaintiff were rejected by the court on defendants' motions for summary judgment. This equates to the same percentages noted in the *Planned Parenthood* case and therefore applying the 60% reduction to the fees and costs for the case in chief, the amount to be awarded to plaintiff would fall in the neighborhood of $14,124.12.

Defendants' counsel argues that the third approach could be termed a combined approach that he proposed in his letter of May 8, 1995, which plaintiffs' counsel rejected. Defendants argue that under this approach, time records indicate that plaintiffs' counsel expended 62 hours specifically on the motions for summary judgment which would result in a reduction of $10,850.00 of time directly related to the two main issues on which plaintiff did not prevail. (See Doc. No. 45, Exh. A, att.). Defendants argue that the remaining time was "general" time and not applicable to any one claim. *Id.* Defendants argue that this general time could be reduced by two-thirds (reflecting a full reduction for the "losing issues"), but in an attempt to negotiate a settlement of the fee question, defense counsel in the May 8, 1995 letter proposed a 20% reduction of this general time which would bring the overall reduced figure down to just over $19,000.00. Defendants argue that since the first two reductions took account only of those matters which were "lost" totally by the plaintiff, a $19,000.00 figure would have reflected a "full" fee for plaintiffs' counsel for hours attributable to the third claim without any allowance for "limited success" in the third claim itself. Defendants' counsel stated that he therefore proposed a 50% reduction of the $19,000.00 figure which would have resulted in a fee of just under $10,000.00, representing 125% of the settlement figure.

Defendants argue that as far as time for preparing the fee petition is concerned, plaintiffs' counsel made no real effort to compromise the amount of fee to be awarded him, and indeed, before the motions for summary

judgment were decided against him, he described his fee as non-negotiable. Defendants argue that in his initial proposal for fees after the $8,000.00 settlement, plaintiffs' counsel requested his full fees and costs of approximately $34,000.00. Defendants argue that when defense counsel responded with a counter proposal such as in the "combined approach" discussed above, plaintiffs' counsel reacted with outrage that any reduction would be proposed and without any attempt at negotiations, indicated that it was his intent to seek his full fee from the court, which he has done by this petition. Defendants argue that plaintiffs' counsel claims over 17 hours of his own time in preparing the petition for fees and about 25 hours of time for his law clerk. Defendants argue that this bill reflects a totally unreasonable and thus unnecessary expenditure of counsel's time which represents about 10% of the time he spent on the whole case in which he made no attempt to avoid by negotiating a compromise of his "full fee." Defendants argue that they should be required to bear *none* of the cost of such intransigence and that at a minimum, the court should apply the *"Farrar* approach", the *"Planned Parenthood"* approach or the "combined approach" in awarding any fee for preparation of the fee petitions.

Finally, defendants argue that they have found no case specifically addressing the issue of whether and how traditional costs are to be reduced if at all in a case which is settled. Defendants argue that in settlement, both parties usually absorb their own costs. Defendants argue that in any event, costs should be grouped with the attorney's fees and then reduced accordingly under any one of their three suggested approaches.

■ Incomplete success is a common basis for a downward adjustment of the lodestar. Where a plaintiff advances several claims and prevails on some but not others, he or she should not be compensated for work on the unsuccessful claims. *Hensley,* supra. "Hensley permits the court to award fees for losing arguments in support of prevailing claims, but not for losing claims." *Pressley v. Haeger,* 977 F.2d 295, 298 (7th Cir.1992). In *Winter v. Cerro Gordo County*

*Conservation Board,* 925 F.2d 1069 (8th Cir. 1991), the court held that where the plaintiff alleged that his discharge from public employment was in retaliation for exercising his First Amendment rights and that the lack of a predetermination hearing violated due process, and he prevailed on the due process claim but not the First Amendment claim, the two claims were so distinct that the district court properly discounted hours spent on the unsuccessful claims. See also *Rode v. Dellarciprete,* 892 F.2d 1177, 1186 (3d Cir.1990).

Further, in *Hensley,* the court did not limit downward adjustments for "incomplete success" to situations involving unrelated claims. Rather, the Court instructed that even if claims are closely related, or there is just one claim, a downward adjustment to the lodestar may be appropriate if the plaintiff achieved only limited success.

■ The issues in this case can be considered distinct. Since no one but Lieback was involved in the alleged assault and battery at the dance, that is an issue distinct from the issue of whether the school board also violated Sherk's rights by condoning such behavior by reason of a policy or custom as evidenced by its reaction to *past* incidents involving Lieback or other employees. Evidence to prove the former would be different from evidence needed to prove the latter. Moreover, each of these issues is distinct from the issue of whether the school district also violated Sherk's due process rights by failing to give him a meaningful hearing prior to the three day suspension. *Winter,* supra.

As noted above, plaintiff brought this lawsuit against Peter Lieback, the security guard involved in the incident at the dance as well as the Pittston Area School District. Since the doctrine of *respondeat superior* does not apply in a § 1983 action, in an attempt to establish that the school district directly participated in the alleged violation of Sherk's civil rights, the plaintiff proceeded primarily on the theory that the school district had a policy or custom permitting or approving violence committed against students in its schools and in engaging in a "cover-up" when such incidents occurred. Since there was no such written policy, the plaintiffs had to proceed by way of giving examples where the school district had engaged in this practice in the past so as to give rise to an implied policy or custom.

■ The court does not know what information plaintiffs' counsel may have had available to him prior to filing this action. However, by signing and filing the complaint, plaintiffs' counsel was certifying, *inter alia,* that to the best of his knowledge, information and belief formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after reasonable opportunity for further investigation or discovery. *See Rule 11(b)(3),* Fed. R.Civ.P. Nevertheless, despite such certification, after discovery, plaintiffs' counsel could only identify one isolated incident occurring more than a year before the incident in question, where Lieback, following a near auto accident between him and a student on school district property, allegedly pushed the student in the chest, said words which the student took as a threat and after school officials initially asked the student not to tell his parents, Lieback was required apologize to the student and his parents. Defendants therefore moved for summary judgment which was awarded in their favor on the basis that under case law, clearly this one incident would not give rise to a triable issue of fact of custom or policy based on past incidents, and indeed would not even be evidence of unconstitutional misconduct since at most, this one incident, which resulted in no injury, would put the school district on notice that in one instance, Lieback engaged in conduct which would rise no higher than a simple, unaggravated tort of battery and would not serve as notice of a pattern of unconstitutional action. (See cases cited in Memorandum filed July 11, 1994, Doc. No. 26). *No other incidents involving Lieback or any school employees were disclosed.*

As noted above, however, in defending against the above motion for summary judgment, plaintiffs' counsel seemed to argue as well that the school district could be held to be personally involved by violating Sherk's right to due process in expelling him for

three days without giving him a "meaningful hearing."

As noted above, the magistrate judge observed in the decision on the motion for summary judgment regarding "policy or custom" that the specific counts or causes of action in the complaint did not appear to allege that David Sherk did not receive a meaningful hearing or an opportunity to be heard, and it was apparently for this reason that no reply was made to the plaintiffs' argument along this line in its reply brief. The magistrate judge therefore did not address the due process issue. However, defendants filed a second motion directed at this issue in which they indicated that they too did not believe that the complaint set forth a due process issue, and it was for this reason that they did not reply to this argument in briefing the prior motion. Defendants however took the opportunity in the second motion for summary judgment to address the due process claim. The magistrate judge granted defendants' motion for summary judgment noting that the evidence, much of which was taken from plaintiffs' own submissions, indicated that under existing case law David received the process to which he was due in the type of hearings he received prior to suspension for three days. (See cases cited in Memorandum filed November 2, 1994, Doc. No. 35).

The effect of the ruling on these two motions for summary judgment was that the school district was no longer in the case on either claim of its *direct involvement* or participation in the alleged violation of Sherk's civil rights. Rather, the school district remained in the case, if at all, under the doctrine of *respondeat superior* which might make it responsible for the *state law claims* against Lieback who was charged with the responsibility to maintain order and safety for those on the premises, as charged in Counts III through V of the complaint. See *Howard v. Zaney Bar*, 369 Pa. 155, 85 A.2d 401 (1952); *Potter Title and Trust Co., Admr. v. Knox*, 381 Pa. 202, 113 A.2d 549 (1955); *Maier v. Patterson*, 553 F.Supp. 150 (E.D.Pa.1982).[3]

Thus, the only claim that remained alive in this case was the claim against Lieback as to whether he used excessive force in his attempt to restore order at the dance. In Lieback's judgment, the "moshing" dance presented a dangerous situation where students could get hurt. According to the evidence, some students were dancing on tables. As Lieback was attempting to have the students cease in this behavior, there is at least a dispute as to whether Sherk jumped and hit, or jumped on, Lieback's back or whether as Sherk contends, he bumped Lieback. Evidence also showed that while Lieback was subduing Sherk, another student grabbed Lieback's arm, and was restrained by an off-duty policeman also at the dance to maintain order. Thus, Lieback's action would have had to have been viewed in the light of the atmosphere existing at the dance.

Moreover, at his deposition, Sherk described no emotional distress and testified that his injuries consisted of some scratches on his neck. Immediately following the injury, Sherk's mother was called and she testified that she and her son as well as Lieback and two school officials met in an office where the incident was discussed for thirty-five minutes. Various versions were discussed and David Sherk stated that he bumped into Lieback while "moshing" but that he did not know where the two bodies hit. The evidence showed that David did not immediately seek medical attention, but rather drove a friend home. It was after he arrived at his own home that his uncle suggested that he go to the emergency room for examination and treatment. Thus, special damages might have consisted of the bill for a single emergency room treatment for the scratches.

Thus, had this case gone to a jury, not only would a verdict in favor of Lieback have been a distinct possibility, but also, even if the verdict were in Sherk's favor, there is a great

---

**3.** Interestingly, the plaintiff from time to time has described Lieback's actions in maintaining order as being "brutal". If that were the case, the school district may not have been in this action even on the basis of the doctrine of *respon-* deat superior on the state law claims because alleged brutal action, if proven, could take Lieback outside of the scope of his employment. See *Zaney Bar, Knox,* and *Patterson, supra.*

possibility that any damage award would be low.

Moreover, as noted above, although defendants contended in their third motion for summary judgment, aimed at the remaining claim, that Lieback would have enjoyed qualified immunity, aside from any question of qualified immunity, it was at least questionable whether this matter even arose to the point of a constitutional violation or was thus a claim for an alleged simple assault and battery which, without any underlying substantial federal claim, should have been tried in the state court. See *Wise v. Pea Ridge School District*, 855 F.2d 560 (8th Cir.1988); *Woodard v. Los Fresnos Independent School District*, 732 F.2d 1243 (5th Cir.1984).

■ Moreover, whatever success was achieved by the settlement was an award of *private damages* which could not be said to benefit the public interest nor indirectly benefit anyone else entering the school district premises. The school district was not required to take any steps with regard to any alleged policy or custom which would have indirectly benefitted others. It would appear, therefore, that the disproportionately low private damage award in relation to the total fees sought can be considered. See *Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (Powell, J. concurring, p. 585 n. 3).

If the court were to use the *Planned Parenthood* approach, that is, since plaintiffs did not prevail on 66% of the claims and therefore the award should be reduced by 60%, the amount of fees and costs would be $17,096.00 of the total amount sought for work on the case in chief as well as the fee petition. However, it would appear to be better to attempt to identify time spent on the losing issues and allocate general time to those issues on some reasonable basis.

■ Defendants assert and plaintiffs do not deny that plaintiffs' "time sheets" show

that 62 hours were directly devoted to two of the three issues in this case on which plaintiffs did not prevail. At plaintiffs' counsel's hourly rate, this translates into $10,850.00 or approximately 33% of the total compensation requested for the work on the case in chief. Thus, this $10,850.00 should be deducted from the total amount claimed.

With respect to the remainder of the fees requested for work on the case in chief, counsel's time sheet does not indicate how much time was devoted to the losing issues and thus can be described as "general time." For example, a good deal of this time involved meetings with clients, preparation and revision of the complaint and service of the complaint. Other time was spent on depositions and other discovery requests. None of this time is detailed with respect to those amounts which may have related to the two losing claims. However, it is obvious that some of this time would so relate. For example, in connection with the motion for summary judgment, deposition testimony was set forth wherein certain school officials were questioned about their knowledge of any other incidents in the past involving Lieback or others.

On the basis of documents presented, the court can agree that plaintiffs' counsel did not make much of an attempt to negotiate a settlement of the fee question, but rather his approach was to demand a fee for all or nearly all of the time spent on the case, with nothing in the way of counter-proposal to defendants. In any event, the time spent on the fee application not only seems high when compared to times spent on the case in chief, but also counsel's time records do not permit specific allocation of any of this time to the losing claims.[4]

■ Nor can it be precisely determined what costs are allocable to the losing claims. Under these circumstances, the amounts requested for expenditure of this *general* time

---

4. In connection with the preparation of the fee petition, counsel indicates that he expended 17.75 hours and his legal assistant expended 24.75 hours and in connection with the reply to the response to the fee petition, counsel indicates that he spent 14 hours. This amounts to 56.5 hours being spent on the fee petition when com-

pared to 62 hours devoted to the motions for summary judgment. Although 24.75 of those hours were expended by the legal assistant, that is in contrast to the 8.5 hours that the legal assistant is said to have spent on the case in chief.

on the case in chief, on the fee petitions and the amount of costs requested should be reduced by 33%, the amount ($10,850.00) by which the specifically identified time on the losing summary judgment issues bears to the total of the amount of fees requested for work on the case in chief ($32,593.25).

In this regard, the *Hensley* court stated as follows:

A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise "billing judgment" with respect to hours worked ... and should maintain billing time records *in a manner that will enable a reviewing court to identify distinct claims.*

Further, in this regard, the *Hensley* court quoted with approval from the language of a First Circuit decision:

As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.

*Hensley,* fn. 12.

In summary then, of the total of the $42,738.81 requested for fees and costs, $10,850.00 which represents time on the losing claims will be deducted leaving a balance of $31,888.81. That amount will be reduced by 33% or $10,523.30 which represents an allocation of general time on the case in chief and fee petitions and costs to the losing issues leaving a balance of fees and costs due of $21,365.51.