Daniel WISE, et al., Appellants,

v.

**PEA RIDGE SCHOOL DISTRICT, et al., Appellees.**

No. 88–1029.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1988.

Decided Aug. 26, 1988.

Charles S. Trantham, Fayetteville, Ark., for appellants.

Constance Clark, Fayetteville, Ark., for appellees.

Before BOWMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and STUART *, Senior District Judge.

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

FLOYD R. GIBSON, Senior Circuit Judge.

Appellants, two students in the Pea Ridge School District and their parents, appeal the order of the district court[1] granting summary judgment to the Pea Ridge School District, employees of the school district, and members of the school board in this case involving the administration of the school district's corporal punishment and in-school suspension policies.

## I. BACKGROUND

On February 20, 1986, Daniel Wise, a sixth grade student, was playing "dodge ball" with six other boys. The school coach, Coach Larry Walker, had previously told the boys not to play the game on two separate occasions and when he saw them continuing to play the game he required the boys to sit out for the remainder of the physical education class. After class Coach Walker gave each of the boys two "licks" on the buttocks with a wooden paddle. The paddle was approximately one-half inch thick, three inches wide, and twenty-two inches long.[2] Corporal punishment is authorized by the school district's policies and Coach Walker complied with them by administering the punishment in the presence of two witnesses.

After school, Daniel's father took Daniel to see a doctor. The doctor did not treat Daniel but suggested that he take Tylenol for any pain. Daniel developed bruises on his buttocks as a result of the paddling. Daniel's father also filed a complaint with the local police department stating that the punishment administered by Coach Walker was excessive. The police investigated the complaint but apparently no criminal charges were filed.

The other school action challenged in this appeal involves a form of in-school suspension called the Special Assignments Class (SAC). Michael Decker, also a student in the Pea Ridge School District, was placed in the SAC classroom for three days because he was tardy seven times.

Michael is a seventh grade special education student who has a reading disorder. The Special Education Committee determined that the school district's disciplinary policies would not adversely affect Michael's education. This determination was made with special reference to the school district's in-school suspension policies.

The description of the SAC classroom given by the appellants gives one the impression that students are disciplined by placing them in an unsupervised cubicle or storage closet. In fact, the SAC classroom is quite roomy, providing thirty-four square feet per child—the minimum recommended under Arkansas law is thirty square feet per child. The SAC classroom contains eight study carrels, a teacher's desk, windows, and is located next to the restroom. SAC students are allowed three regularly scheduled restroom breaks throughout the day and at other times students are allowed to visit the restroom after getting permission from the supervising SAC teacher. Michael stated that he has never asked for permission to use the restroom and had his request denied.

## II. DISCUSSION

We begin our analysis by noting that the district court decided this case on summary judgment. When reviewing a grant of summary judgment this court is bound by the same legal standards that bound the district court. First, we must consider all of the facts in the light most favorable to the nonmoving parties. Second, we must reverse unless we determine that there are no genuine issues of material fact and the movant is entitled to judgment as a matter

---

**1.** The Honorable H. Franklin Waters, Chief United States District Judge for the Western District of Arkansas. The district court's opinion is published at 675 F.Supp. 1524 (W.D.Ark. 1987).

**2.** The dimensions of the paddle used in the instant case are strikingly similar to those of the paddle involved in the Supreme Court's *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) decision. *See id.* at 656, 97 S.Ct. at 1405 ("The authorized punishment consisted of paddling the recalcitrant student on the buttocks with a flat wooden paddle measuring less than two feet long, three to four inches wide, and about one-half inch thick.").

of law. *Portis v. Folk Constr. Co.*, 694 F.2d 520, 522 (8th Cir.1982). We have carefully reviewed the entire record in this case and we do not believe that there are any genuine issues of material fact that would preclude summary judgment. Further, we believe that the school district is entitled to judgment as a matter of law because Daniel and Michael have failed to establish a violation of their substantive due process rights guaranteed by the Fourteenth Amendment.[3]

■ Appellants have submitted several affidavits by nonparties that discuss the manner in which other students were corporally punished and other methods of in-school suspension. We do not believe that any of the evidence regarding the school's corporal punishment and in-school suspension policies and their administration with respect to nonparties is properly before this court. Daniel cannot use prior instances of alleged excessive corporal punishment in order to bootstrap his claim into a constitutional violation.[4] His claim must rise or fall on its own merits. The same is true with respect to the school district's in-school suspension policies. Michael presents evidence suggesting that other

students were placed in cubicles and storage closets, yet he does not allege that he was subjected to any form of in-school suspension other than the SAC classroom. Accordingly, in reviewing the evidence that was before the district court we have only considered that evidence which specifically relates to Daniel and Michael.

If appellants had proved a violation of *their* constitutional rights then the extraneous evidence relating to the school's policies may have been properly admitted to show a custom or practice on the part of the school district in order to hold it liable. But since appellants' rights were not violated this extraneous evidence is not properly before this court.

This was noted by the district court when it stated:

> [A]ffidavits [of nonparties] cannot be used to bypass the requirement that the plaintiffs themselves must have suffered constitutional deprivations at the hands of the defendants. Had the plaintiffs themselves been able to withstand a summary judgment motion, such evidence may have proved helpful to the plaintiffs

---

3. The appellants do not challenge the use of disciplinary corporal punishment or the SAC classroom on procedural due process grounds. Such a claim would be without merit. In *Ingraham*, the Supreme Court determined that corporal punishment such as that involved in this case does not violate procedural due process. *Ingraham*, 430 U.S. at 682, 97 S.Ct. at 1418 ("We conclude that the Due Process Clause does not require notice and a hearing prior to the imposition of corporal punishment in the public schools, as that practice is authorized and limited by the common law.") (footnote omitted). Further, the record reflects that the school principal attempted to notify Daniel's parents that corporal punishment had been used to discipline Daniel. With respect to the school district's in-school suspension policy, we note that the Supreme Court in *Goss v. Lopez*, 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975), in a divided 5–4 decision held that students facing expulsion or suspension from public school have property and liberty interests that qualify for protection under the due process clause. We do not believe, however, that the *Goss* decision requires adherence to the strictures of procedural due process in the context of a temporary in-school suspension. *See, e.g., Hayes v. Unified School Dist. No. 377*, 669

F.Supp. 1519, 1528 (D.Kan.1987) (in-school suspension of up to five days by placing special education student in three foot by five foot room did not violate the procedural due process rights of special education student). In-school suspension does not exclude the student from school and consequently a student's property interest in a public education is not implicated. Furthermore, the interference with the student's liberty or property interests is *de minimis* and thus due process is not implicated. *Cf. Goss*, 419 U.S. at 576, 95 S.Ct. at 737.

4. Daniel suggests that the evidence concerning unrelated instances of excessive corporal punishment is admissible to show Coach Walker's malicious intent when he paddled Daniel. *See, e.g., Garcia v. Miera*, 817 F.2d 650, 655 n. 7 (10th Cir.1987) (test for determining whether student's substantive due process rights have been violated through use of corporal punishment requires an examination of the subjective intent of the one administering the punishment), *cert. denied*, —— U.S. ——, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). We nevertheless believe that as long as the punishment was not excessive as a matter of law and was a reasonable response to the student's misconduct the intent of the one who administers the punishment is irrelevant.

in establishing the "policy" or "custom" alleged.

675 F.Supp. at 1527.

### A. Corporal Punishment

■ Daniel Wise argues that his substantive due process rights guaranteed under the Fourteenth Amendment were violated when Coach Walker used corporal punishment to discipline him. The undisputed facts are that Coach Walker gave Daniel two licks with a paddle in the presence of two witnesses. The paddling was given after two previous warnings failed to deter Daniel and the other boys from misbehaving. After the paddling Daniel's buttocks became reddened and slightly bruised. We do not believe that these facts rise to the level of a substantive due process violation.

In *Metzger v. Osbeck,* 841 F.2d 518, 520 (3rd Cir.1988), the Third Circuit noted that "[a] decision to discipline a student, if accomplished through excessive force and appreciable physical pain, may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment." *See also Garcia,* 817 F.2d at 653; *Woodard v. Los Fresnos Indep. School District,* 732 F.2d 1243, 1246 (5th Cir.1984); *Hall v. Tawney,* 621 F.2d 607, 611 (4th Cir.1980); *cf. Ingraham,* 430 U.S. at 673–74, 97 S.Ct. at 1413–14. We agree that at some point the administration of corporal punishment may violate a student's liberty interest in his personal security and substantive due process rights, however, we do not believe that the conduct in the instant case even comes close to that point.

■ We believe that a substantive due process claim in the context of disciplinary corporal punishment is to be considered under the following test: 1) the need for the application of corporal punishment; 2) the relationship between the need and the amount of punishment administered; 3) the extent of injury inflicted; and 4) whether the punishment was administered in a good

faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.

This circuit has applied a similar test in the analogous context of police brutality cases. *See Davis v. Forrest,* 768 F.2d 257, 258 (8th Cir.1985). *See also Hall,* 621 F.2d at 613 (using police brutality analysis in context of disciplinary corporal punishment in public schools).

Applying this test, we do not believe that Daniel's substantive due process rights were violated. Coach Walker's use of corporal punishment was not at all unreasonable in light of the circumstances. Daniel and the other boys were verbally warned to stop playing dodge ball prior to the administration of the punishment yet the boys did not heed the Coach's warning. The relationship between the need to use force and the amount of force used was also reasonable under the circumstances. Daniel only received two licks for his mischevious behavior and while the punishment did cause his buttocks to redden and resulted in some discomfort we do not believe that the force was excessive or administered for improper reasons.

Taking the facts in the light most favorable to Daniel we remain convinced that Coach Walker administered the punishment in a good faith effort to maintain discipline in the gymnasium and not for the malicious or sadistic purpose of causing harm. This is highlighted by the fact that Coach Walker administered the punishment at the conclusion of his class—allowing time for the boys to reflect on their behavior and providing a period of time to cool off before punishing the boys.[5] The punishment was also administered uniformly to all of the boys involved in the dodge ball game. Finally, Coach Walker punished the boys in the presence of two witnesses in compliance with school district policy.

■ Moreover, under Arkansas law educators have a common law privilege to administer disciplinary corporal punishment. *Berry v. Arnold School District,* 199 Ark.

---

5. In his affidavit Daniel states that he and the other boys sat out the rest of the class for 30 to

40 minutes before Coach Walker punished them.

1118, 137 S.W.2d 256, 259 (1940); *Bramlet v. Wilson*, 495 F.2d 714, 718 (8th Cir.1974) (Mehaffy, C.J., dissenting). Even if the corporal punishment is excessive and beyond the common law privilege accorded school teachers it does not necessarily follow that the student's substantive due process rights have been violated. *Cf. Woodard*, 732 F.2d at 1244 ("This [corporal punishment] was at most a tort for which state courts afford relief."). This court noted in *Rubek v. Barnhart*, 814 F.2d 1283, 1285 (8th Cir.1987), that "it is well established that not every violation of state tort or criminal assault laws committed by a state official results in a constitutional violation cognizable under section 1983." Something more is required to find a violation of the student's substantive due process rights. Minor discomfort and hurt feelings do not make a federal case. The conduct must be shocking to the conscience and amount to a severe invasion of the student's personal security and autonomy. The conduct of Coach Walker in this case does not rise to this level.

■ Ordinarily the question of whether the force used in administering disciplinary corporal punishment is excessive is a question properly resolved by a trier of fact and thus not properly determined on a motion for summary judgment. However, based on our review of the affidavits, agency reports, and color photographs of Daniel taken the day the punishment was administered,[6] we believe that no reasonable trier of fact could conclude that the force used in this case was excessive and beyond that which is permissible at common law.

B. In-school Suspension

■ The final issue raised in this appeal involves Michael Decker's placement in the SAC classroom for three days. Michael argues that since he is a special education student his substantive due process rights were violated when he was denied access to his special education teacher and resource materials. Michael also challenges his placement in the SAC classroom because of its physical size and the manner in which the classroom is administered.[7] Michael argues that the SAC classroom is often unsupervised and students are denied access to the restroom.

Our research has not turned up a single decision in any of the Federal Courts of Appeal that addresses a substantive due process challenge to a student's placement in an in-school suspension program. There are a few district court cases that have been reported that provide some guidance. *See Dickens v. Johnson County Board of Educ.*, 661 F.Supp. 155, 158 (E.D.Tenn. 1987) (placing educationally and emotionally handicapped student in a "timeout box", a form of isolation, did not violate his substantive due process rights); *Fenton v. Stear*, 423 F.Supp. 767 (W.D.Pa.1976). However, none of the cases has sustained a substantive due process claim in this context. Likewise, we do not believe that Michael sustained any violation of his substantive due process rights when he was placed in the SAC classroom.

Contrary to Michael's description of the SAC classroom which gives the impression that the room is a broom closet, the room is actually quite spacious—providing thirty-four square feet per student. The room has good lighting as well as several windows. Michael's characterization of the room is reminiscent of the conditions that existed in many foster homes during the turn of the century. Such is not the case in the SAC classroom.

---

**6.** The photographs were taken four to five hours after Daniel was paddled.

**7.** Michael also argues that the SAC program is in violation of the Program Standards and Eligibility Criteria for Special Education established by the Arkansas Department of Education. These matters, however, are not properly before this court. Nowhere in the appellant's complaint does it mention the Program Standards and Eligibility Criteria nor are they a part of the record in this case. The district court was not presented with the arguments that are now made for the first time on appeal. Accordingly all references to the Program Standards and Eligibility Criteria in the appellant's brief are stricken and this court will only address the question that was presented to the district court. That question is whether Michael's substantive due process rights were violated when he was placed in the SAC classroom.

The fact that Michael did not have ready access to his special education teacher and resources is also of no consequence. The facts reflect that the Special Education Committee determined that Michael would not be adversely affected by being placed in the SAC classroom. Further, the record reflects that Michael did not fall behind in his studies as a result of his SAC placement. Michael was given all of his regular class assignments and completed them while in the SAC classroom. The record also does not support Michael's claim that he was denied access to the restroom. In his deposition Michael testified that he was allowed to use the restroom in the morning, during lunch, and in the afternoon. He also testified that he was never denied access to the restroom.

The SAC program furthers the school district's legitimate interest in maintaining order and discipline in its schools and is rationally related to these legitimate interests. *Cf. Mitchell v. Board of Trustees*, 625 F.2d 660, 665 (5th Cir.1980) ("Because the rule and the punishment for violating the rule clearly are rationally related to the goal of providing a safe environment in which children can learn, it comports with substantive due process."). Under these facts we believe that Michael's assertion that his substantive due process rights have been violated is without merit.

Finally, we note that our decision is consistent with the Supreme Court's decisions which defer to school administrators in matters such as discipline and maintaining order in the schools. *See, e.g., Hazelwood School District v. Kuhlmeier*, —— U.S. ——, 108 S.Ct. 562, 567, 98 L.Ed.2d 592 (1988); *Ingraham*, 430 U.S. at 682, 97 S.Ct. at 1418.

## III. CONCLUSION

We conclude that the district court properly granted summary judgment in this case because the facts, when viewed in the light most favorable to Daniel and Michael, fail to support substantive due process claims. The disciplinary corporal punishment involved in this case does not even approach that which is required to prove a substantive due process violation. The claim that Michael's substantive due process rights were violated when he was placed in the school's in-school suspension program is without merit.

Accordingly, we affirm the judgment of the district court.