# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1374EA

_____

| | | |
|---|---|---|
| Dorothy London, Parent and Next Friend of Carl Avery, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | On Appeal from the United |
| | * | States District Court |
| Directors of the DeWitt Public Schools; | * | for the Eastern District |
| James O. Emerson, Superintendent of | * | of Arkansas. |
| the DeWitt Public Schools; Tim Walton, | * | |
| Principal of the DeWitt Middle School; | * | |
| and Jeff Rader, Teacher, DeWitt Public | * | |
| Schools, | * | |
| | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 17, 1999
Filed: November 2, 1999

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and SIPPEL,[1] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

_____

[1]The Hon. Rodney W. Sippel, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

Carl Avery, through his mother Dorothy London, appeals the District Court's[2] judgment against him. Avery claims that the District Court erred in three respects: (1) in holding that defendant Jeff Rader did not violate Avery's substantive-due-process rights; (2) in holding there were no procedural-due-process violations in Avery's suspension or in his expulsion; and (3) in not ordering the DeWitt School System to submit a remedial plan concerning discrimination in hiring. We affirm the judgment of the District Court. We hold, in particular, that the school officials' conduct in the course of a physical confrontation with the plaintiff, a 13-year-old student, was not so egregious or unconscionable as to shock the judicial conscience. In reaching this conclusion, we are mindful that effective discipline and order in the schools are vital to the educational process.

I.

On the morning of January 8, 1997, Jeff Rader, a teacher and coach at the DeWitt Middle School, entered the school cafeteria and saw two students, Carl Avery and Richard Foster, engaged in an activity that the District Court characterized as "horseplay" or "scuffling." Coach Rader told Avery and Foster to leave the cafeteria. Foster followed Coach Rader's directive. However, Avery told Coach Rader that he was going to eat his breakfast. Coach Rader again told Avery to leave the cafeteria. Avery then said he was going to get his books.

At this point, Coach Rader placed his hands on Avery and began to remove him from the cafeteria by force. Although the District Court was not clear on the precise chronology, it is undisputed that Avery fought back. Avery stated at a subsequent disciplinary hearing that he "slammed" Coach Rader into the table. During the course

---

[2]The Honorable Susan Webber Wright, Chief Judge, United States District Court for the Eastern District of Arkansas.

of this encounter, Coach Rader dragged Avery on the floor for approximately fifteen feet and then banged Avery's head against a metal pole outside the cafeteria. At trial, although Avery claimed he had sustained a head injury, he was unsure which side of his head had been hurt.

Coach Rader and Avery proceeded to Principal Tim Walton's office. Once inside, Principal Walton asked Avery what happened. Avery testified at trial that he attempted to tell his side of the story, but was told to "shut up" by Principal Walton when Coach Rader interjected his version. The District Court found that at some point, after unsuccessfully trying to leave, a frustrated Avery stood up and tried to speak. Principal Walton either put his hands up, indicating that he wanted Avery to stop, or placed his hands on the collar of Avery's coat. Avery struck both of Principal Walton's arms. Principal Walton then called the police.

Immediately prior to the meeting in his office, Principal Walton had called Avery's mother, Dorothy London, and informed her she needed to come to school because of a problem with her son. Ms. London arrived at the school shortly after the police. Principal Walton explained the situation to Ms. London, and informed her he would be recommending that her son be expelled.

Six days later, Principal Walton sent a letter to Ms. London detailing the incident, and informed her that Avery had been suspended for ten days. The letter stated that Principal Walton intended to recommend that Avery be expelled for the remainder of the school year. This letter further stated that Ms. London could request a hearing before the Board of Directors if she so desired, and at that meeting Avery had a right to be represented by his parents, a lay representative, or an attorney.

The next day, James Emerson, the Superintendent of the DeWitt School District, wrote a letter to Ms. London. In this letter, he informed Ms. London of his agreement with Principal Walton's decision to expel Avery for the remainder of the school year.

This letter also informed Ms. London that she could request a hearing before the Board of Education, and explained to her the procedures for doing so.

A hearing was held on January 22, 1997, before the DeWitt School Board to consider the expulsion recommendation. Avery was represented at this hearing by attorney John Walker. Mr. Walker, pursuant to district rules, requested disclosure of statements given by Coach Rader and Principal Walton. However, Mr. Walker did not receive these statements until after Rader and Walton had testified. The District Court reviewed the audiotapes of the hearing, and found that Mr. Walker was allowed to question all witnesses against Avery, was not limited in types of questions he could ask, and was allowed to respond to all of the allegations and testimony presented in support of the recommendation of expulsion. At the conclusion of the hearing, the school board voted to expel Avery for the remainder of the school year.

Dorothy London filed this lawsuit against Superintendent James Emerson, Principal Tim Walton, Jeff Rader, and the Board of Directors of the DeWitt School District. After a two-day bench trial, and at the conclusion of the plaintiff's case, the District Court granted defendants' motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c). Dorothy London now appeals that judgment.

II.

The plaintiff argues that the factual findings of the District Court, supplemented by other portions of the record, make out a substantive-due-process violation under the standard articulated by this Court in Wise v. Pea Ridge School District, 855 F.2d 560, 564 (8th Cir. 1988). We disagree.

The District Court held that Coach Rader did not violate Avery's substantive-due-process rights. The Court supported its holding by making certain factual findings from the record. The Court found that Avery twice refused Rader's directive to leave

the cafeteria, and that Avery fought back and "slammed" Rader into a table when Rader attempted to remove him from the cafeteria. Moreover, the District Court was "unable to find that . . . his [Coach Rader's] actions were motivated by bad faith or ill-will."

We review the District Court's Rule 52(c) factual findings for clear error. See Geddes v. Northwest Missouri State University, 49 F.3d 426, 429 n.7 (8th Cir. 1995). Our review of the record convinces us that the District Court's factual findings had substantial support in the record and are not clearly erroneous. Even if we supplement the District Court's factual findings with other parts of the record, as plaintiff requests, Coach Rader's conduct did not constitute a substantive-due-process violation under Wise.

The first Wise factor is the need for application of corporal punishment. Carl Avery twice disobeyed Coach Rader. His first statement that he was going to eat his breakfast is inconsistent with an intent to follow Coach Rader's directives. When he was again told to leave the cafeteria, he again disobeyed, stating that he was going to get his books. Although Coach Rader could have allowed Avery to get his books and then leave, we give school administrators substantial deference in matters such as student discipline and maintaining order. See Peterson v. Ind. School District No. 811, 999 F. Supp. 665, 673 (D. Minn. 1998).

The second Wise factor is the relationship between the need and amount of punishment administered. Plaintiff argues that by physically removing Avery from the cafeteria and banging his head against a pole, Coach Rader used an unreasonable amount of force. However, Avery was "mouthing off" to the coach and was involved in a physical altercation with him. We cannot find that Coach Rader's use of force was sufficiently excessive to approach a substantive-due-process violation.

The third Wise factor is the extent of the injury inflicted. We assume that Avery received a bump on his head, but the severity of the injury is questionable in light of the

fact that Avery was unable to recall at trial which side of his head he had a bump on.

The fourth <u>Wise</u> factor is whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm. Here, the District Court was unable to find Rader's actions motivated by bad faith or ill-will, and this view of the facts is not clearly erroneous.

Taken as a whole, we agree with the District Court that Coach Rader's actions were not shocking to the conscience, see <u>Wise</u>, <u>supra</u>, 855 F.3d at 565. This is not the kind of truly egregious and extraordinary case for which the theory of substantive due process is properly reserved.

### III.

The plaintiff next argues that the District Court erred in holding that the suspension and expulsion did not violate Avery's procedural-due-process rights. With respect to the suspension, the District Court made the factual finding that Avery was apprised of the charges against him and was given an opportunity to present his side of the case in Principal Walton's office the day of the incident. This finding has adequate support in the record, and is not clearly erroneous. The facts on which the suspension was based occurred in the Principal's immediate presence. The situation is like that of a direct contempt, in which someone misbehaves himself in open court. The Principal's suspension of the plaintiff was not procedurally defective.

With regard to the expulsion, the plaintiff was fully informed of the grounds upon which the expulsion recommendation was based, and her son was given a hearing where he was represented by counsel who had full opportunity to examine and cross-examine witnesses. It is true that the school district violated its own rules by not supplying plaintiff's counsel with the statements of two witnesses in advance of the hearing. This violation is not to be condoned, but it does not automatically amount to

a violation of the Fourteenth Amendment. Significantly, plaintiff does not indicate anything in particular that his lawyer would have done differently if the statements had been provided on time.

## IV.

Plaintiff's last argument is that the DeWitt School District discriminates with respect to staffing in its schools. This is a free-standing claim, which could be brought even in the absence of the plaintiff's other disciplinary-related claims.

The Supreme Court has held that where plaintiffs prove a current condition of segregated schooling within a school district where a dual system was once compelled by law, the State has an affirmative duty to eliminate all vestiges of state-imposed segregation. See Keyes v. School District No. 1, 413 U.S. 189, 200 (1973). Therefore, when a plaintiff can show both prior de jure discrimination and currently segregated schools, there is a presumption that current disparities are the result of the defendant's prior unconstitutional conduct. See Dayton Board of Education v. Brinkman, 443 U.S. 526, 537-38 (1979). The burden then shifts to the defendant to prove otherwise. The Supreme Court has identified several areas of schools where a dual system can be shown, including but not limited to student body composition, faculty, staff, transportation, extracurricular activities, and facilities. See Green v. County School Board of New Kent County, 391 U.S. 430, 435 (1968).

Arkansas once required its school districts to operate racially segregated systems. Raney v. Board of Education, 391 U.S. 443 (1968). But the plaintiff has not, on this record, made a sufficient showing of current segregation. All the plaintiff has offered as evidence is a statistical imbalance in the faculty of the DeWitt School system, plus a lack of affirmative effort to recruit black applicants for faculty positions. This is not enough to shift the burden to defendants and create a presumption of unlawful intent.

Plaintiff touches upon only one of the <u>Green</u> factors (staffing).  Given the passage of time since state-mandated segregated schooling ceased, there are simply too many other possible explanations that could plausibly explain these statistical disparities.  See <u>Jenkins v. State of Missouri</u>, 122 F.3d 588, 595 (8th Cir. 1997) (passage of time is evidentiary consideration in determination of shifting burden).  Finally, although this plaintiff does have standing to litigate this issue, in the context of this case this claim seems to come as an afterthought in what is essentially a dispute over an individual disciplinary action.

In our opinion, the plaintiff has not shown enough to warrant a full-blown inquiry into the hiring practices of the DeWitt School system.  We hold against plaintiff on this claim, but do so without prejudice to the right of any proper party to make a fuller showing.

V.

As a final matter, plaintiff asks this Court to reinstate her supplemental state-law claims.  We affirm the District Court's decision to decline to exercise supplemental jurisdiction.  These claims are dismissed without prejudice.

For these reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.