# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2702

_____

| | | |
|---|---|---|
| Marilyn Golden, as parent and next friend of Timothy Balch, a minor; Timothy Balch, a minor, | * * * * | |
| Appellants, | * * | |
| v. | * * | |
| William A. Anders, individually and in his official capacity as principal of Hampton High School; Darrell Donaldson, individually and in his official capacity as superintendent of Hampton Public Schools; Debbie Fleming, individually and in her official capacity as a teacher at Hampton Elementary School; Hampton Public Schools, | * * * * * * * * * * | Appeal from the United States District Court for the Western District of Arkansas. |
| Appellees. | * | |

_____

Submitted: January 17, 2003

Filed: March 28, 2003

_____

Before HANSEN, Chief Judge, RICHARD S. ARNOLD, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

High school principal William Anders forcefully restrained Timothy Balch, a sixth-grade student at Hampton Elementary School, who violently kicked a school vending machine and resisted the efforts of a teacher who tried to get him settled down. Balch's mother subsequently filed a suit under 42 U.S.C. § 1983 in which she alleged that Anders violated her son's substantive due-process rights. The District Court[1] granted Anders's motion for summary judgment. This appeal followed, and we affirm.

I.

Because we are reviewing a motion for summary judgment, we state the facts in the light most favorable to the non-movant. Embry v. Lewis, 215 F.3d 884, 887 (8th Cir. 2000). At the end of the February 25, 2000, school day, Balch—who stood five-and-a-half feet tall and weighed 170 pounds—began kicking a vending machine in the school's hallway. He was upset because the machine failed either to dispense the item he had selected or to return his dollar. Debbie Fleming, a teacher at the school, heard the ruckus from her classroom and went to investigate. Finding Balch kicking the machine, she grabbed him and told him to stop, but he ignored her. Fleming then began shaking Balch by his arms. Balch stopped kicking and held one of Fleming's arms to keep his balance.

Anders arrived on the scene seconds later. He served as principal of a high school located in the same building complex as Balch's elementary school, but he was not the principal of Balch's school. Seeing Balch with his hands on Fleming, Anders grabbed Balch's neck and shirt collar, led him out of the building, and "threw" him onto a bench, where he landed on his shoulder. Balch Dep. at 34–36. Once on the

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

bench, Balch tried to stand up, but Anders held him down by his neck and collar. Balch finally got to his feet for a moment, but Anders quickly forced him back to the bench. Balch struggled to breathe, see id. at 40, and felt pain in his neck. Anders yelled at onlooking students that they should leave or face suspension. According to one student, Anders was "angry, not businesslike, in his manner." J. Smith Aff. at 1.

Anders instructed the school's resource officer, Steve Davis, who had just arrived, to handcuff Balch. At that point, Balch was "breathing kind of funny" and was trying to get some air. Balch Dep. at 42. They took Balch to Anders's office, where Anders told Balch that Anders was "close to knockin' [his] head off." Id. at 44. Davis eventually took Balch to the county jail. Balch's mother then came to the school and met with Anders. She claims that Anders said that he "roughed [Balch] up pretty good" and that he was "going to throw the book at him." Golden Dep. at 22. Balch's mother picked her son up from the jail and took him to the emergency room, where a doctor injected him with a steroid shot to relieve his swollen neck and found a pulled nerve in his shoulder. A few days later, Balch's pediatrician diagnosed him with a strained neck and gave him a neck brace to wear for two weeks. As of October 2001, Balch occasionally complained about his neck, but he never returned to a doctor for a checkup, and his neck pain does not prevent him from participating in any activity.

## II.

We review the District Court's grant of Anders's motion for summary judgment de novo. Embry, 215 F.3d at 887. Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We turn to the merits of the substantive due-process claim alleged by Balch's mother. In order to prove that government conduct amounted to a substantive due-

process violation, a plaintiff must show that the conduct shocks the conscience. <u>S.S. by & through Jervis v. McMullen</u>, 225 F.3d 960, 964 (8th Cir. 2000) (en banc), <u>cert. denied</u>, 532 U.S. 904 (2001). The government action must be "truly irrational" and consist of conduct that is more than merely arbitrary, capricious, or violative of state law. <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc) (internal citations omitted). Substantive due process "is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." <u>Moran v. Clarke</u>, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (quoting <u>In re Scott County Master Docket</u>, 672 F. Supp. 1152, 1166 (D. Minn. 1987), <u>aff'd sub nom.</u> <u>Myers v. Scott County</u>, 868 F.2d 1017 (8th Cir. 1989)).

In determining whether Anders's conduct shocked the conscience, the District Court evaluated four factors that we set forth in <u>Wise v. Pea Ridge School District</u>, 855 F.2d 560 (8th Cir. 1988), to determine whether a school official's use of force in the corporal punishment context violated a student's substantive due-process rights: (1) the need for the application of corporal punishment; (2) the relationship between the need and the amount of punishment administered; (3) the extent of injury inflicted; and (4) whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm. <u>Id.</u> at 564. Our only subsequent application of the <u>Wise</u> factors was in <u>London v. Directors of the DeWitt Public Schools</u>, 194 F.3d 873 (8th Cir. 1999). In <u>London</u>, a coach dragged a student along a cafeteria floor for fifteen feet before slamming the student's head against a metal pole. <u>Id.</u> at 875. We affirmed the district court's grant of the coach's motion for judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c).

One year after we decided <u>Wise</u>, the Supreme Court rejected the notion that all § 1983 excessive-force claims are governed by a single standard. <u>Graham v. Connor</u>,

490 U.S. 386, 393 (1989).[2] The Supreme Court reiterated this principle a decade later, explaining that "[r]ules of due process are not . . . subject to mechanical application in unfamiliar territory." County of Sacramento v. Lewis, 523 U.S. 833, 850 (1998). The Court also has emphasized that a plaintiff claiming his substantive due-process rights have been violated must be able to show that the state actor who is the defendant acted in a way that "shocks the conscience." Id. at 846. The four Wise factors used by our Circuit to analyze whether corporal punishment amounts to a substantive due-process violation, therefore, may not necessarily be the correct approach for analyzing either a corporal-punishment claim or, as in this case, an excessive-force claim involving a government official, like Anders, who was forced to take action in a matter of moments. The Lewis case, in fact, provides guidance as to a viable standard for such a situation. In Lewis, a police officer driving his squad car was engaged in a high-speed chase with a motorcycle. The chase ended with the officer's car fatally striking a passenger on the motorcycle when the officer could not avoid running into the motorcycle after the motorcycle tipped over. The passenger's estate filed a § 1983 claim alleging a substantive due-process violation. The Court wrote, "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates" a substantive due-process violation. Id. at 853. Our Circuit has applied this standard. In Neal v. St. Louis County Board of Commissioners, 217 F.3d 955 (8th Cir. 2000), cert. denied, 531 U.S. 1145 (2001), a police officer unintentionally shot and killed his fellow officer in a shootout with a suspected felon. We recognized that "in rapidly evolving, fluid, and dangerous situations which

---

[2]The Wise test is based on, and virtually identical to, a four-factor test set out by the Second Circuit in Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973). The vast majority of federal courts applied the Glick factors to all excessive-force claims against government officials. Graham, 490 U.S. at 393. As noted, the Supreme Court has since rejected the blanket application of the Glick factors to excessive-force claims. Id. at 393–94.

preclude the luxury of calm and reflective deliberation, a state actor's action will shock the conscience only if the actor intended to cause harm." Id. at 958.

Anders was in neither a high-speed chase nor an exchange of gunfire, but he was in the position where he had to make an "instant judgment," Lewis, 523 U.S. at 853, as to how to quell the immediate danger posed by Balch. Under Lewis and Neal, we cannot consider Anders's conduct to be conscience-shocking unless he maliciously and sadistically injured Balch, see Neal, 217 F.3d at 958 (citing Lewis, 523 U.S. at 853, for proposition that liability for substantive due-process claim turns on whether state actor applied force in good faith or maliciously and sadistically), and the record here would not support such a finding. There is no evidence suggesting that Anders disliked Balch prior to their altercation; in fact, they had never met. Balch Dep. at 31; Anders Dep. at 7, 10. Balch's mother argues that Anders's shouting at the onlooking students to leave the scene demonstrates maliciousness, but this evidence cannot bear the weight she seeks to assign to it. The only reasonable inference that could be drawn from this evidence is that, consistent with Anders's deposition testimony, he wanted to clear the area in order to prevent additional misbehavior. See Anders Dep. at 14. It is firmly established in the law of our Circuit that "we give school administrators substantial deference in matters such as school discipline and maintaining order." London, 194 F.3d at 876. In addition, Anders's angry demeanor can only be attributed to Balch's misbehavior and the difficult task of restraining him. Inasmuch as Anders had never met Balch before the incident, Anders's harsh comments after the incident could only be a consequence of the altercation and not evidence of a previously formed animus towards Balch, and thus these comments are not evidence of malice. Given that Anders acted quickly and decisively in responding to an incident of serious student misbehavior, we do not find his conduct to be conscience-shocking. Consequently, we believe the substantive due-process claim is without merit.

III.

Alternatively, we apply the Wise factors, and our conclusion does not change. Although whether the school official acted maliciously (and we already have determined there is no evidence in the summary judgment record that would support a finding that Anders acted maliciously) is just one factor under Wise, we conclude that none of the other Wise factors weigh in the plaintiff's favor either. Balch's mother takes greatest issue with the District Court's analysis of the second Wise factor. In her view, Anders inflicted more force than was necessary given that Balch had stopped kicking the vending machine; she states that a more appropriate punishment would have been "a couple of whacks from his elementary school principal." Br. of Appellant at 18. Her argument conflates Anders's attempts to defuse an exigent situation with punishment. We conclude that Anders's use of force to subdue Balch was an appropriate response to Balch's violent behavior. In kicking the vending machine, wilfully ignoring Fleming's order to stop, and grabbing Fleming, Balch presented himself as a danger to himself, to others, and to school property. Moreover, Balch was a physically imposing student who resisted Anders and was not easily subdued. In the circumstances, despite the injury Balch suffered, the evidence would not support a finding that Anders employed excessive force.

The first and third Wise factors also weigh strongly against finding a violation of substantive due process. As for the first factor, Fleming's attempt to prevent Balch from further attacking the vending machine and to settle him down apparently had failed, creating a need for Anders to employ forceful physical restraint. As for the extent of the injury inflicted, Balch's mother insists that "we are talking about considerably more than the minimal injury involved in a garden-variety paddling." Br. of Appellant at 24. This argument again incorrectly equates Anders's actions with punishment. Balch received one steroid shot and wore a neck brace for two weeks. Although he claims to have occasional neck pain today, his mother stated that the injury does not prevent him from participating in any activity. Balch's injury falls

well short of those sustained by students whose substantive due-process claims have withstood summary judgment. See, e.g., Garcia by Garcia v. Miera, 817 F.2d 650, 658 (10th Cir. 1987) (finding summary judgment inappropriate for principal where nine-year-old left with deep bruises, bleeding, and permanent scar after paddling), cert. denied, 485 U.S. 959 (1988); cf. Hall v. Tawney, 621 F.2d 607, 614–15 (4th Cir. 1980) (reversing dismissal of claim brought by student who spent ten days in emergency room with tissue damage from spanking with rubber paddle).

The London case, our most recent application of the Wise factors, is instructive. In London, we did not find the coach's use of force to be excessive, and therefore affirmed the District Court's grant of the coach's motion for judgment on partial findings, because the student refused to obey the coach's order and because the student fought back. 194 F.3d at 876. In this case, Balch refused to obey Fleming's order, and—although he did not slam a teacher's head into a table as the student did in London—he used a considerable amount of force against the vending machine, showed potential to use physical violence against Fleming, appeared to be out of control when Anders came upon the scene, see Anders Dep. at 10–11, and resisted Anders's efforts to subdue him, see Balch Dep. at 38–39. Like the coach's actions in London, Anders's actions were not "excessive" as that term is understood in constitutional adjudication.

IV.

Because Anders's conduct does not amount to a violation of Balch's substantive due-process rights, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.