United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 16, 2004**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 6, 2004

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-30967

CATHY FLORES, ON BEHALF OF KEVIN FLORES

Plaintiff - Appellant

versus

SCHOOL BOARD OF DESOTO PARISH; WALTER LEE, individually and as Superintendent of DeSoto Parish School Board; RONNIE LAND, individually and as employee of the DeSoto Parish School Board; DIANE TROQUILLE, individually and as employee of the DeSoto Parish School Board; CHARLES HAZARD, individually and as employee of DeSoto Parish School Board; CLINTON WYSINGER, individually and as employee of the DeSoto Parish School Board; COREGIS INSURANCE CO

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
(No. 02CV1918)

Before SMITH, WIENER, and PICKERING, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Cathy Flores brought this action on behalf of her son, Kevin, a fifteen-year-old special education student at DeSoto [Parish] High School, against Defendants-Appellees (collectively "defendants"). Plaintiff appeals the district court's grant of defendants' Rule 12(b)(6) motion to dismiss and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

its denial of her motions for (1) costs and attorney fees, (2) leave to file a second amended complaint, (3) a pre-trial scheduling conference, and (4) Rule 11 sanctions against defense counsel. We affirm.

## I. FACTS AND PROCEEDINGS[1]

While serving detention for allegedly disobeying a teacher, Kevin was released temporarily to attend a school assembly. After the assembly, Kevin visited the restroom before returning to detention. On Kevin's return, a teacher/coach, Clinton Wysinger, accused him of trying to skip detention, which Kevin denied. Wysinger then ordered Kevin to eat his lunch in the detention room. Kevin "questioned" Wysinger's order, but denies that he did so in a disruptive or unruly manner. Kevin's questioning of the order angered Wysinger.

After ordering the other students out of the room, Wysinger took off his tie, rolled up his sleeves, and physically threatened Kevin. When Kevin refused to fight Wysinger, he ordered Kevin to stand up, threw him against the wall, placed his hands around Kevin's neck, and began to choke him while threatening further bodily harm. After several seconds, Wysinger momentarily released Kevin but then pushed him back against the wall, bruising his

---

[1] As the district court dismissed plaintiff's complaint for failure to state a claim under FED. R. CIV. P. 12(b)(6), we accept as true the facts pleaded by the plaintiff. See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312-13 n.6 (5th Cir. 2002).

shoulder. After directing Kevin to sit down again, Wysinger put on his tie, buttoned his sleeves, and instructed Kevin not to tell anyone about the incident because "no one would believe a sorry sack of shit." According to Kevin, Wysinger's use of force was neither in response to any disruptive behavior by Kevin nor in furtherance of any pedagogical purpose, but was inflicted maliciously with intent to cause harm solely because Kevin had questioned the order to eat his lunch in the detention room.

When the other students returned to the room, they noticed that Kevin's face was red and that he was having trouble breathing. Kevin requested permission to go to the principal's office, but Wysinger refused. Some of Kevin's classmates used their cell phones to call Kevin's mother, who in turn called 911 and Kevin's father.

Kevin's father and a sheriff's deputy met at the school later that day. When they inquired of Wysinger and another teacher, Charles Hazard, both denied that the earlier incident had occurred. The next morning, Kevin's mother took him to see a doctor, who referred Kevin to a throat specialist. The doctors found a bruise on Kevin's shoulder but no harm to his throat.

Principal Diane Troquille convened a parent/teacher conference to address Kevin's accusations against Wysinger. Troquille warned Kevin to forget about the incident, told him that he had a week to think it over, and volunteered that Wysinger could bench press 400 pounds. Kevin requested permission to present defense testimony

3

from the students who had called his mother, but Troquille denied the request. When Kevin refused to retract his charges, the principal recommended that he be expelled.

Ronnie Land, the school's Director of Child Welfare and Attendance, presided over Kevin's expulsion hearing. The prosecutor was Charles Hazard, the teacher who, with Wysinger, had earlier denied that the incident had occurred. Land would not allow Kevin to present witnesses on his own behalf, but permitted Hazard to do so. Land ruled that Kevin must choose between being expelled or attending the Mansfield Alternative School for a minimum of eighteen weeks. Kevin chose the alternative school, and this litigation ensued.

Flores filed her original complaint in September of 2002, requested and received leave to amend, and later filed an amended complaint. Defendants responded by filing a motion to dismiss under Fed. Rule Civ. Proc. 12(b)(1), (5) and (6). In his Report and Recommendation, the magistrate judge proposed that the district court grant defendants' motion to dismiss all of plaintiff's claims. The District Court accepted that recommendation and entered judgment (1) dismissing with prejudice plaintiff's federal constitutional claims, (2) dismissing without prejudice plaintiff's Individuals with Disabilities Education Act ("IDEA") claims for failure to exhaust administrative remedies, and (3) dismissing without prejudice plaintiff's state law claims under 28 U.S.C. § 1367. Plaintiff timely filed a notice of appeal, challenging both

4

the form of defendants' motions under Rule 7 and the district court's disposition of the action.

Plaintiff also filed a motion for costs and attorney's fees under Fed. Rule of Civ. Proc. 4(d)(2), including a claim for the costs of formal service of process on the individual defendants, charging that they had refused to agree to waive formal service. Defendants objected to plaintiff's motions because she had not properly executed requests for waiver under Rule 4. Agreeing with defendants, the magistrate judge denied plaintiff's motion, and his order was sustained by the district court. Plaintiff appeals this ruling as well.

After the magistrate judge promulgated his Report and Recommendation, plaintiff filed motions to amend her complaint and for a pretrial conference. Both motions were denied by the magistrate judge. Plaintiff did not appeal the denials of these orders to the district court but has appealed them to us.

## II. ANALYSIS[2]

### A. Motion for Costs

We review a district court's denial of a motion for attorney fees and costs for abuse of discretion.[3] The magistrate judge

---

[2] Plaintiff filed a lengthy appellate brief in which she challenges each and every ruling made in the district court. Those of plaintiff's claims that we do not address in this opinion are without merit, and the district court's rulings complained of by plaintiff are affirmed.

[3] Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993).

denied plaintiff's motion for costs of service, finding that she failed to show that she had filed proper waiver requests or that she had addressed the waivers directly to defendants as required by Federal Rule of Civil Procedure 4(d)(2)(a). The court ordered plaintiff's motion denied for these reasons.

Rule 4(d) establishes procedures by which parties may request and agree to waive formal service. The rule requires the district courts to assess costs against defendants who refuse to waive service of process without good cause.[4] An important purpose of the rule is to impose the costs of formal process on defendants who do not show good cause for refusing waiver.[5]

Plaintiff argues that she substantially complied with Rule 4's procedural requirements and that defendants therefore must pay costs for service.[6] Defendants counter that plaintiff served their

_____

[4] FED. R. CIV. PROC. 4(d)(5).

[5] Stapo Indus., Inc. v. M/V Henry Hudson Bridge, 190 F.R.D. 124, 125-26 (S.D.N.Y. 1999)(holding that, although the plaintiff's waiver request failed to specify an officer of the defendant for delivery, this failure did not prejudice the defendant and therefore required it to pay costs).

[6] Plaintiff cites decisions that have found other plaintiffs' imperfect efforts to obtain waivers of process from defendants to be sufficiently compliant with Rule 4 to require recalcitrant defendants to pay service costs. See Stapo, 190 F.R.D. at 125-26; Trevino v. D.H. Kim Enters., Inc., 168 F.R.D. 181, 182-83 (D. Md. 1996) (finding that plaintiff's compliance with former Rule 4(c)(2)(C)(ii), which allowed defendant twenty instead of thirty days to reply and contained the same substantive information about waiver though not the same language as required by current Rule 4(d)(2), complied substantially enough with the new rule to justify imposing costs on the defendants); Dymits v. American Brands, Inc., No. C 96-1897 CW,

6

attorney rather than serving them or their authorized agent directly as required by the rule. Defendants contend that this kind of "substantial compliance" with the mandatory requirements of the rule will not suffice to relieve a plaintiff of paying costs.[7]

Defendants also correctly note that the plaintiff has not produced copies of the waiver requests to show that they comport with Rule 4. Although defendants cite no case law requiring plaintiffs to produce proof of compliance with Rule 4, the burden to show entitlement to costs and fees under other statutes does rest on the applicant.[8] Otherwise, a defendant would be forced to prove a negative, i.e., that he did not receive proper forms.

Unlike service of process for purposes of establishing personal jurisdiction, service of a request for waiver of formal service might be effective and achieve Rule 4's goals of minimizing the costs of litigation even if a plaintiff does not strictly

---

1996 WL 751111 at *15-16 (N.D. Cal. Dec. 31, 1996) (ordering the defendant to pay costs because it was not prejudiced by the plaintiff's failure to include one of two copies of the waiver form and a sentence about the increased time for response available to defendants who waive formal service of process).

[7] Plaintiff also argues that her counsel and defense counsel reached an oral agreement by which defense counsel agreed to accept service and sign the waivers for defendants. Defense counsel denies entering into such an agreement. The magistrate judge found that this was irrelevant, as such a "gentleman's agreement" between counsel could not waive the mandatory requirements of the rule. We agree.

[8] Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (applying 42 U.S.C. § 1988); Berryman v. Hofbauer, 161 F.R.D. 341, 344 (E.D. Mich. 1995)(applying Rule 54(d) and 28 U.S.C. § 1920).

7

comply with every formalistic requirement of the rule.  Plaintiff's faulty service in combination with no proof that she actually submitted the proper forms to the defense counsel, however, justifies the district court's order.  We affirm the denial of plaintiff's motion for costs.

B.    Rule 12(b)(6) Motion to Dismiss[9]

District court grants of motions to dismiss under Rule 12(b)(6) are reviewed *de novo*.[10]  Dismissal for failure to state a claim may not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle her to relief.[11]  The allegations must be viewed in the light most favorable to plaintiff.[12]  Conclusional allegations or "legal conclusions masquerading as factual conclusions" will not survive a defendant's Rule 12(b)(6) motion to dismiss.[13]

---

[9] Plaintiff argues that defendants' motion to dismiss is flawed for not expressly stating that it was made under 12(b)(6). The magistrate judge treated this as a 12(b)(6) motion and defendants' original motion stated that it was made under Rule 12(b)(6).  Plaintiff cites a few cases rejecting motions to dismiss for failure to state with particularity the grounds therefor as required by FED. R. CIV. PROC. 7.  Those cases, however, involved documents that apparently did not resemble motions at all.

[10] Dow Chemical Co. v. United States *ex rel*. Doe, 343 F.3d 325, 328 (5th Cir. 2003).

[11] Id.

[12] Spiller v. City of Texas City, 130 F.3d 162, 164 (5th Cir. 1997).

[13] Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

1.   Claims Under 42 U.S.C. § 1983

Plaintiff appeals the dismissal of her § 1983 claims for use of excessive force, procedural due process, slander, false arrest, failure to train, and substantive due process violations.  Only plaintiff's excessive force claim merits discussion.

a.  Excessive Force

This circuit does not permit public school students to bring claims for excessive corporal punishment as substantive due process violations under § 1983 if the State provides an adequate remedy.[14] We have previously held that the State of Louisiana affords students an adequate remedy through its tort law and statutory provisions in Title 17.[15]  In an effort to circumvent this obstacle, plaintiff insists that Wysinger's acts should not be characterized as corporal punishment but rather as an excessive force violation of her son's Fourth Amendment rights and substantive due process interest in his bodily integrity.  The magistrate judge nevertheless proceeded on the assumption that Wysinger's acts did constitute corporal punishment — an assumption that plaintiff strenuously contests — and determined that, even if this circuit permitted such claims under the Fourth or Fourteenth Amendments, plaintiff's claim could not survive.

---

[14] Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 874 (5th Cir. 2000).

[15] Coleman v. Franklin Parish School Bd., 702 F.2d 74, 76 (5th Cir. 1983).

i.    Fourth Amendment: Seizure

We address plaintiff's Fourth Amendment claim first because, if it succeeds, she would be precluded from maintaining a Fourteenth Amendment claim grounded in the same conduct.[16]  We have not previously decided whether a teacher's momentary use of force against a student gives rise to a Fourth Amendment seizure violation.[17]  The Middle District of Pennsylvania and the Third Circuit have rejected the claim that a teacher's momentary use of force may support a Fourth Amendment claim.[18]  These courts cited the unique constitutional position of public school students, whose movements and location are subject to close control by schools and teachers, in finding that students charging excessive use of force by a teacher must bring claims for violations of the Fourteenth

_____

[16] County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (stating that where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government conduct, that amendment and not the more generalized notion of substantive due process should guide the analysis)(citations omitted).

[17] In Hassan v. Lubbock Indep. Sch. Dist., 55 F.3d 1075, 1079 (5th Cir. 1995), we noted in passing that seizure claims may arise by or at the direction of school officials, but that case involved a literal seizure. A child was placed in a holding cell during a class field trip to a prison, yet we found no Fourth Amendment violation because the seizure was for the purpose of maintaining discipline. Id. at 1080.

[18] Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 171-72 (3d Cir. 2001); Kurilla v. Callahan, 68 F. Supp. 2d 556, 563 (M.D. Pa. 1999).

10

Amendment rather than the Fourth Amendment.[19]  They further stated that the Fourth Amendment is primarily concerned with an initial deprivation of liberty or invasions of privacy, but that a teacher's use of force is more properly regarded as a condition of the school environment in which students' liberty is already curtailed.[20]  Such use of force is not  "a scenario to which the Fourth Amendment . . . textually or historically appl[ies]."[21]

The Supreme Court and this circuit have likewise recognized that preservation of order in the schools allows for closer supervision and control of school children than would otherwise be permitted under the Fourth Amendment.[22]  Further, permitting students to bring excessive force claims under the Fourth Amendment would eviscerate this circuit's rule against prohibiting substantive due process claims on the part of schoolchildren for excessive corporal punishment.  Given this prohibition against constitutional claims for corporal punishment, the special constitutional status of schoolchildren, and the fact that the momentary "seizure" complained of in this case is not the type of

---

[19] Gottlieb, 272 F.3d at 171-72; Kurilla, 68 F. Supp. 2d at 561.

[20] Gottlieb, 272 F.3d at 172; Kurilla, 68 F. Supp. 2d at 561.

[21] Kurilla, 68 F. Supp. 2d at 563.

[22] Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 655-56 (1995);  Hassan, 55 F.3d at 1079 (citing New Jersey v. T.L.O., 469 U.S. 325, 339 (1985)(finding search of student conducted by principal constitutional).

11

detention or physical restraint normally associated with Fourth Amendment claims, we decline to recognize plaintiff's claim under the Fourth Amendment.

ii. Fourteenth Amendment:  Substantive Due Process

Characterized as corporal punishment, Wysinger's alleged acts do not support a substantive due process claim. Thus, whether the magistrate judge was correct in treating Wysinger's behavior as corporal punishment rather than as a malicious and unprovoked attack is an important issue.

The Supreme Court described corporal punishment as force that a teacher "reasonably believes to be necessary for a child's proper control, training, or education."[23]  Several other circuits have classified informal physical confrontations as corporal punishment, so long as it is possible to construe the force as an attempt to serve pedagogical objectives.[24]  At bottom, fairly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of

---

[23] Ingraham v. Wright, 430 U.S. 651, 661 (1977) (citing RESTATEMENT (SECOND) OF TORTS § 147(2) (1965)).

[24] Gottlieb, 272 F.3d at 174 (citing cases).  See, e.g., Neal v. Fulton County Bd. of Educ., 229 F.3d 1069, 1071-72 (11th Cir. 2000) (finding that gym teacher's hitting student in the eye with a weight lock during a fight was corporal punishment); London v. Dirs. of the DeWitt Pub. Schs., 194 F.3d 873, 876 (8th Cir. 1999)(analyzing a teacher's dragging a student across the floor and banging his head against a metal pole after student refused to leave cafeteria as corporal punishment); Metzger v. Osbeck, 841 F.2d 518, 519-20 (3d Cir. 1988) (holding a student in a chokehold until he passed out, fell to the ground and broke his nose analyzed as corporal punishment).

12

maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose.

Plaintiff asserts that Coach Wysinger acted "maliciously and sadistically in order to cause harm . . .and not for the purposes of restoring order or maintaining discipline." The facts as alleged by plaintiff, however, also show that Kevin was tardy returning to detention and that Wysinger believed that Kevin had been purposefully delaying or avoiding his return to the detention room. Thus, even if Kevin's allegations about Wysinger's inappropriate, abusive behavior are true, Wysinger's acts apparently were meant to punish Kevin and did not constitute a random, malicious, and unprovoked attack. We would never condone the kind of conduct of which Wysinger is accused, but his alleged actions are properly characterized as corporal punishment. We therefore hold that plaintiff has not stated a substantive due process claim. If she is entitled to a remedy for Wysinger's conduct, it must be under Louisiana state law and not under the Constitution of the United States.

2. Claims Under the IDEA

Plaintiff contests the district court's dismissal without prejudice of her claims advanced under IDEA for her failure to exhaust administrative remedies.[25] She does not deny that these claims require exhaustion but argues that exhaustion would have

---

[25] See 20 U.S.C. § 1400 et seq. (1997).

13

been inadequate and futile in this instance.  Plaintiff does not, though, supply support for these arguments.

We have previously denied an IDEA claim for failure to exhaust under similar circumstances despite plaintiff's arguments that exhaustion would have been futile.  In Gardner v. School Board Caddo Parish, a schoolchild's parents challenged a School Board policy as violating the IDEA, lost, and immediately went to federal court rather than exhausting the administrative remedies provided by the statute.[26]  Although the parents had petitioned the school board to change its policy, they had not formally sought review by the board.[27]  Most importantly, the parents did not appeal the school's decision to a state agency and, although they argued that it would be futile to ask the school board to change its policy, they did not allege that appeal to a state administrative agency would have been futile.[28]  We held that the parents had failed to meet their burden of demonstrating that appeal would be futile or inadequate and dismissed the case for lack of subject matter jurisdiction.

---

[26] 958 F.2d 108, 111 (5th Cir. 1992).  Congress amended 20 U.S.C. § 1415 after the Gardner decision, striking former § 1415(f), the section on which we relied for the proposition that plaintiffs are required to exhaust administrative remedies before bringing an IDEA claim in federal court.  See id.  Subsection (f)'s exhaustion requirement has been preserved in new subsection (l), however.

[27] Id. at 112.

[28] Id.

14

In the instant case, plaintiff has not advanced any reason why appeal would be futile or inadequate. She has not even petitioned the School Board, as the Gardner plaintiffs did. Like the Gardner plaintiffs, she has failed to show that she should not be required to exhaust administrative remedies before bringing suit in federal court.

C. Motions to Amend, for Scheduling Conference, and for Rule 11 Sanctions

Defendants correctly note that plaintiff failed to file an objection to the magistrate judge's denial of leave to amend with the district court, as required by Federal Rule of Civil Procedure 72. Consequently, plaintiff's claim is not properly before us, and we decline to address it.[29] As plaintiff also failed to object to the magistrate judge's denial of her motion for a scheduling conference, we shall not consider it either.[30]

Plaintiff also appeals the district court's declaration that defendants' motion to disqualify plaintiff's counsel is moot. Plaintiff claims to have filed a motion for Rule 11 sanctions in opposition to defendants' motion and contests the magistrate

---

[29] Rittenhouse v. Mabry, 832 F.2d 1380, 1387 (5th Cir. 1987) (holding that a plaintiff's failure to appeal a magistrate judge's denial of her motion for leave to amend to the district court resulted in no jurisdiction in the circuit court).

[30] FED. R. CIV. P. 72(a) (requiring parties to object to magistrate judge's rulings on non-dispositive matters within ten days of the magistrate's order).

15

judge's and district court's refusals to consider these sanctions when they declared defendants' motion moot.

Plaintiff has never filed a viable Rule 11 motion, however. Rule 11(c)(1) requires that a party make a separate motion for Rule 11 sanctions rather than including it in another motion or request.[31]  Plaintiff's challenges to each of these magistrate or district court's rulings are therefore unavailing.

### III. CONCLUSION

For the foregoing reasons, all rulings, orders, and judgments of the magistrate judge and district court are, in all respects, AFFIRMED.

---

[31] FED. R. CIV. P. 11(c)(1)(A).