

Villanova University School of Law

11-15-2001

# Gottlieb v. Laurel Highlands Sch

Precedential or Non-Precedential:

Docket 00-3422

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Gottlieb v. Laurel Highlands Sch" (2001). *2001 Decisions.* Paper 263.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/263

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 15, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3422

RHONDA GOTTLIEB, by and through her guardian and
parent, Mary Calabria,
        Appellant

v.

LAUREL HIGHLANDS SCHOOL DISTRICT;
MICHAEL CARBONARA

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 98-cv-01013)
District Judge: The Honorable Donald J. Lee

ARGUED MAY 2, 2001

Before: MANSMANN, NYGAARD, and ROSENN,
Circuit Judges.

(Filed: November 15, 2001)

        Peter M. Suwak, Esq. (Argued)
        P.O. Box 1
        Pete's Surplus Building
        Washington, PA 15301

         Attorney for Appellant

Daniel F. LaCava, Esq. (Argued)
850 Washington Avenue
Carnegie, PA 15106

Attorney for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge:

The District Court granted summary judgment in favor of
Laurel Highlands School District and its assistant principal,
Michael Carbonara, on a student, Rhonda Gottlieb's,
excessive force claims under 42 U.S.C. S 1983. Gottlieb filed
her S 1983 suit in the Fayette County Court of Common
Pleas along with a state assault and battery claim. The
matter was then removed to the District Court for the
Western District of Pennsylvania and referred to a
Magistrate Judge. Appellees filed a Motion for Summary
Judgment, which the Magistrate Judge recommended be
granted. The District Court agreed and granted the motion
on the S 1983 claims. The assault and battery claim was
remanded to the Fayette County Court of Common Pleas.
Appellant Gottlieb contends on appeal that there remain
issues of material fact with respect to appellee Carbonara,
and facts ignored by the District Court, which would
establish "municipal liability" with respect to her claims
against the School District. We will affirm the District
Court.

I. BACKGROUND

On or about February 9, 1996, Rhonda Gottlieb, then a
junior at Laurel Highlands Public High School, entered the
school with the intention of confronting another female
student, Leah Saluga, about her relationship with Gottlieb's
ex-boyfriend. Gottlieb was a disruptive student with a
lengthy disciplinary record at the school. On this day she
arrived late and apparently did not plan on attending
classes. Upon her arrival, Gottlieb proceeded directly to
Saluga's classroom. The two argued without physically
engaging each other, and a school security officer arrived.

2

The security officer instructed Gottlieb to leave the building, but Gottlieb disobeyed and continued to threaten Saluga. The security officer then escorted Gottlieb to the principal's office.

Gottlieb stood in the doorway of assistant principal Michael Carbonara's office while he spoke with a teacher. Carbonara then allegedly began yelling at Gottlieb and spoke a few words to another principal, Robert Raho. Raho then told Gottlieb that he had just been on the phone with Gottlieb's mother and that Gottlieb was not allowed in school until a parent-teacher conference took place. According to Gottlieb, Carbonara then told her to"shut up, because he didn't want to hear nothing [sic][s]he had to say" and pushed her shoulder with his hand, propelling her backwards into a door jam. As a result of this contact, Gottlieb's lower back struck the door jam. Gottlieb described the encounter in her deposition:

> Q. Were you caused to fall to the floor from this being pushed?
>
> A. No. Its [sic] not like he pushed me to try to knock me out or anything. He didn't! its [sic] not like he like hauled off [and] like cold-cocked me to knock me out. It wasn't like that. He was just in a fit of rage, and he was mad. And he was yelling, and it happened.
>
> Q. Is it your belief that Mr. Carbonara intended to force you into the doorjamb?
>
> A. No. Why would he just all of a sudden hit me? I never did nothing to the man.
>
> Q. Is it your belief that Mr. Carbonara intended to hurt you at all?
>
> A. No, I just think he was mad, and he didn't know what he was doing.
>
> Q. And do you know why he was mad?
>
> A. Probably because I was up there acting like an immature kid at the high school. I shouldn't have been there, and I went there.

Gottlieb alleges that she suffers chronic back pain and cramping as a result of this impact. She has been treated

by several doctors and chiropractors for the injury. She has been advised to avoid strenuous activities involving her back, and she has not been able to perform various jobs or participate in some leisure activities.

Carbonara was earlier involved in a physical altercation with an opposing football coach, and Gottlieb therefore argues that the School District is liable because of its failure to address the risk Carbonara posed to students.

II. DISCUSSION

A. Gottlieb's S 1983 Claim Against Carbonara

i) The Specific Constitutional Right Allegedly Infringed

We first must "identify[ ] the specific constitutional right allegedly infringed" and determine if Gottlieb's claim should be reviewed under the Fourth, Fifth, or Fourteenth Amendment. Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 1870 (1989). Because different standards attach to the various rights, identifying the proper constitutional approach is essential. Here, the difference between reviewing Carbonara's actions under the reasonableness standard of the Fourth Amendment or the shocks the conscience standard of the Fourteenth Amendment may be determinative. See County of Sacramento v. Lewis , 523 U.S. 833, 118 S.Ct. 1708 (1998); Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994) (en banc).

Because the Fourth Amendment invokes the less stringent reasonableness standard, Gottlieb argues that Carbonara's push amounts to a seizure effectuated by a government actor who "by means of physical force or show of authority, . . . in some way restrain[ed] the liberty of a citizen." Graham, 490 U.S. at 395 n.10. The Fourth Amendment's prohibition against unreasonable seizures, however, does not properly cover Gottlieb's alleged injury. Courts have recognized that public schools are in a"unique constitutional position," because "[o]nce under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators." Wallace by Wallace v. Batavia Sch. Dist.

4

101, 68 F.3d 1010, 1013 (7th Cir. 1995); see also Vernonia Sch. Dist. 47 J v. Acton, 515 U.S. 646, 655, 115 S. Ct. 2386, 2392 (1995) (students are lawfully subject to a level of restraint that would be unacceptable if "exercised over free adults."). The Fourth Amendment's "principal concern . . . is with intrusions on privacy," and therefore when the infraction deals not "with the initial decision to detain an accused and the curtailment of liberty that such a decision necessarily entails, but rather with the conditions of ongoing custody following such curtailment of liberty," then the claim invokes principles of substantive due process. Ingraham, 430 U.S. at 674, 97 S. Ct. at 1401 (citation omitted). Gottlieb did not experience the type of detention or physical restraint that we require to effectuate a seizure. As the District Court for the Middle District of Pennsylvania correctly stated, the "momentary use of physical force by a teacher in reaction to a disruptive or unruly student does not effect a `seizure' of the student under the Fourth Amendment," and therefore "is a scenario to which the Fourth Amendment does not textually or historically apply." Kurilla by Kurilla v. Callahan, 68 F. Supp. 2d 556, 563 (M.D. Pa. 1999).

Gottlieb's action is a claim of excessive force, not of unreasonable detention. In our leading case reviewing corporal punishment in public schools under S 1983, Metzger v. Osbeck, 841 F.2d 518, 520 (3d Cir. 1988), we did not explicitly adopt the shocks the conscious standard, but rather did so impliedly, stating that the offending conduct must be inspired by malice or sadism. This led Judge Weis to state in his dissent that the majority had "apparently adopted" the shocks the conscience standard. Metzger, 841 F.2d at 522 (Weis, J., dissenting). We agree and take this opportunity to clarify the standard we adopted in Metzger, applying the Fourteenth Amendment's shocks the conscience standard to federal claims alleging the use of excessive force by public school officials. Accord, Johnson by Johnson v. Newburgh Enlarged Sch. Dist. , 239 F.3d 246 (2d Cir. 2001); Neal by Neal v. Fulton County Bd. of Educ., 229 F.3d 1069 (11th Cir. 2000); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716 (6th Cir. 1996); Wise v. Pea Ridge Sch. Dist., 855 F.2d 560 (6th Cir. 1988); Garcia

5

by Garcia v. Miera, 817 F.2d 650 (10th Cir. 1987); Webb v. McCullough, 828 F.2d 1151 (6th Cir. 1987).

ii) Application of the Shocks the Conscience Standard

The substantive component of the Due Process Clause "protects individual liberty against `certain government actions regardless of the fairness of the procedures used to implement them.' " Collins v. Harker Heights, 503 U.S. 115, 125, 112 S. Ct. 1061, 1068 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665 (1986)). "[T]he substantive component of the due process clause is violated by [state conduct] when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." County of Sacramento , 523 U.S. at 847, 118 S. Ct. at 1717 (citation omitted). Thus,"conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 849, 118 S. Ct. at 1718.

In Metzger, 841 F.2d at 520, we cited Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), for the standard to evaluate excessive force claims:

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

The Fourth Circuit refined the Glick criterion in Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980). Hall now provides the most commonly cited test for claims of excessive force in public schools:

> As in the cognate police brutality cases, the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess

6

> of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience. Not every violation of state tort and criminal assault laws will be a violation of this constitutional right, but some of course may.

Hall, 621 F.2d at 613 (citation omitted).

The Glick and Hall standard has been adopted with slight variations by several Courts of Appeals. See Johnson, 239 F.3d at 251–52 ("[I]n determining whether the constitutional line has been crossed," the Court must consider "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."); Neal, 229 F.3d at 1075 ( "[E]xcessive corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior . . . . [T]he plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury."); P.B. v. Koch, 96 F.3d 1298 (9th Cir. 1996); Wise , 855 F.2d at 563 ("[A] substantive due process claim in the context of disciplinary corporal punishment is to be considered under the following test: 1) the need for the application of corporal punishment; 2) the relationship between the need and the amount of punishment administered; 3) the extent of injury inflicted; and 4) whether the punishment was administered in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.").

To avoid conflating the various elements of the shocks the conscience test into a vague impressionistic standard, we analyze its four elements in turn: a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

7

The first question is whether there was a pedagogical justification for Carbonara's use of force. Corporal punishment in schools typically refers to the application of physical force by a teacher or administrator to punish a student for some type of school-related misconduct. See Ingraham, 430 U.S. at 661, 97 S. Ct. at 1407. The most common application of physical force involves the formal administration of paddlings or other predesignated physical punishment. See Saylor v. Board of Educ., 118 F.3d 507, 511 (6th Cir. 1997); Fee v. Herndon, 900 F.2d 804, 806 (5th Cir. 1990); Wise, 855 F.2d at 562; Garcia, 817 F.2d at 653; Hall, 621 F.2d at 609. Informal physical confrontations have also been considered corporal punishment. See Neal, 229 F.3d at 1060 (coach's striking student in face with a metal weight and destroying his eye considered corporal punishment); London v. Directors of DeWitt Pub. Schs., 194 F.3d 873, 875 (8th Cir. 1999) (school official's dragging student across room and banging student's head against a metal pole described as corporal punishment); P.B., 96 F.3d at 1300 (principal's hitting, grabbing, and pushing of several students actionable as a constitutional violation); Metzger, 841 F.2d at 518 (school official's placing student in choke hold and causing student to lose consciousness and fall to the pavement resulting in a broken nose and fractured teeth analyzed under corporal punishment framework). In such cases where a school official grabs a student to break up a fight, chokes a student when hearing him curse, or paddles a student for misbehaving, the reason that the administrator resorts to force is evident. At the very least, the force must be capable of being construed as an attempt to serve pedagogical objectives.

Here it is unclear what pedagogical objective Carbonara's alleged push might have served. Although insubordinate earlier, Gottlieb stood in Carbonara's doorway obediently. Gottlieb was informed that she was not allowed in school until after a parent-teacher conference took place. There appears at this point to have been no reason for Carbonara to physically discipline Gottlieb, and he has not offered any justification for the alleged act. As the Fifth Circuit Court of Appeals has stated, "[c]orporal punishment rises to the level of a constitutional deprivation only when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal

8

of maintaining an atmosphere conducive to learning."
Woodard v. Los Fresnos Indep. Sch. Dist., 732 F.2d 1243,
1246 (5th Cir. 1984). Carbonara has not yet offered any
justification for his use of force, and it is thus possible that
a reasonable jury could find that there was no justifiable
need for any use of force against Gottlieb. Carbonara's
push could be found to be a rash, irrational, and needless
abuse of his authority. Consequently, it is inappropriate to
presume in his favor on this point and in the context of
summary judgment.

The second question is whether the force Carbonara
utilized was excessive to accomplish the legitimate objective
in this situation. Because we have concluded that there
was no need for Carbonara to use force at all, excessivity is
simply not an issue. Carbonara's use of force may not have
been in service of any pedagogical objective, but rather
could have been an unwarranted fit of "rage" (as Gottlieb
described it in her deposition). Hence, summary judgment
is inappropriate on this prong of the test. As the Supreme
Court stated in Sandin v. Connor, "[a]lthough children sent
to public school are lawfully confined to the classroom,
arbitrary corporal punishment represents an invasion of
personal security to which their parents do not consent
when entrusting the educational mission to the State." 515
U.S. 472, 485, 115 S. Ct. 2293, 2300-01 (1995). In this
respect, school officials risk federal constitutional liability
claims if they subject their students to force that does not
serve any appropriate pedagogical objective.

The third question is whether the force applied by
Carbonara "was applied in a good faith effort to maintain or
restore discipline or maliciously and sadistically for the very
purpose of causing harm." Metzger, 841 F.2d at 520
(quoting Glick, 481 F.2d at 1033). In essence, we are asked
to examine what animated Carbonara's action or his intent
in acting. There are three possibilities: 1) Carbonara did not
intend to push Gottlieb or cause her injury, and therefore
the contact was accidental; 2) Carbonara intended to push
Gottlieb but not to cause her injury, and therefore the
injury was accidental; 3) Carbonara intended to push
Gottlieb and cause her injury. Because a constitutional
violation will only arise if Carbonara's actions were

9

malicious and sadistic, it is the harm, and not the contact, that must be intended.1 Therefore only the third possibility can sustain her claim.

In Metzger, we reasoned that the teacher's statement that he did not intend to harm the student, by itself, was not enough to establish conclusively that the teacher did not intend to harm the student by placing him in a choke hold. Metzger, 841 F.2d at 520–21. We reasoned that the teacher's position as a physical education instructor and wrestling coach may make him aware of the risks in restraining the student. Id. Since the Metzger court found contradictory evidence of what the teacher intended, summary judgment was inappropriate on the facts presented. Here, unlike Metzger, we are faced with a different scenario because of the slight nature of the push and Gottlieb's own testimony. First, Carbonara did nothing more than place his hand on Gottlieb's shoulder and push her back inches to the door jamb. The push itself was so minor that even if the injuries she alleges occurred, it cannot be inferred from the act itself that Carbonara intended to act maliciously and sadistically so as to constitute a constitutional violation. A slight push is very different than the choke hold applied in Metzger . Second, in her deposition Gottlieb explicitly stated that she believed that Carbonara did not intend to injure her. (See opinion p. 3, supra).

Thus, Carbonara's conduct, although possibly tortious, does not give Gottlieb a constitutional cause of action. Carbonara's placing his hand on a student's shoulders and moving her mere inches is not "a brutal and inhumane abuse of official power literally shocking to the conscience."2

_____

1. The use of the term "sadistic" in this standard is something of a misnomer. Precedent does not require that the alleged offender take pleasure or satisfaction from the injury, as the term entails, but rather only that the offender intended harm. The requirement that the act be sadistic, therefore, adds nothing to the requirement that it be malicious. See BLACK'S LAW DICTIONARY 956–58 (6th ed. 1990).

2. We base our conclusion on Carbonara's lack of intent to injure Gottlieb, and therefore do not need to determine whether the alleged injury was sufficient to support a constitutional claim.

10

Hall v. Tawney, 621 F.2d at 613. Applying the summary judgment standard, we conclude that no reasonable jury could find that Carbonara intended to harm Gottlieb. Therefore, his actions do not rise to the level of a constitutional violation.

B. Gottlieb's S 1983 Claim Against the School District

Gottlieb claims that Carbonara's previous altercation with an opposing football coach was handled by school administration in such a way as to constitute deliberate indifference to physical abuse of students generally, and created a policy, practice, or custom that caused her injury specifically. We do not agree.

We have recognized that a municipality will be liable for the constitutional violations of a state actor if it acts "with deliberate indifference to the consequences [and] established and maintained a policy, practice or custom which directly caused constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989) (emphasis added). Gottlieb has failed to allege a direct casual connection between any such practice and her injury. See Losch v. Borough of Parkesburg, Pa. , 736 F.2d 903 (3d Cir. 1984). This causal connection can be established by alleging "that policymakers were aware of similar conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." Id. at 910. The previous conduct is not sufficiently similar to draw a direct causal connection to Gottlieb's injury.

Because Gottlieb has not alleged sufficient facts to establish causation, we need not consider whether the School District acted with deliberate indifference and established and maintained an unconstitutional policy, practice, or custom. The District Court therefore did not err in granting summary judgment against Gottlieb'sS 1983 claim against the School District.

III. CONCLUSION

In sum, we conclude that there are no material issues of fact that would preclude granting summary judgment in

favor of Carbonara, and that the District Court properly concluded that Gottlieb's pleading was insufficient to establish a cause of action against the School District. We will affirm the summary judgment in all respects.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit