NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1937
_____

KENNETH A. ASHTON, SR. and WILLIAM E. ASHTON,

Appellants

v.

CITY OF UNIONTOWN; EDWARD FIKE, both individually and as mayor of
Uniontown; JASON COX, both individually and as Uniontown Chief of Police;
GEORGIA TOMI, both individually and as an employee of the City of Uniontown

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 10-cv-00803)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted Under Third Circuit LAR 34.1(a)
December 8, 2011

Before:  HARDIMAN and BARRY, *Circuit Judges* and SLOMSKY[*], *District Judge*

Filed: January 25, 2012
_____

OPINION OF THE COURT
_____

---

[*]The Honorable Joel H. Slomsky, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

SLOMSKY, *District Judge*

Kenneth A. Ashton, Sr. and William E. Ashton appeal the District Court's order dismissing their federal civil rights suit brought pursuant to 42 U.S.C § 1983. We will affirm.

I.

Because we write for the parties who are well acquainted with the case, we recount only the essential facts and procedural history. On June 12, 2008, William Ashton went to his motorcycle, parked on East Main Street in Uniontown, Pennsylvania. He noticed that Georgia Tomi, a Uniontown meter maid, was issuing him a ticket. William informed Tomi he would move his vehicle and started to mount it. While observing this movement, Tomi struck William once in the back with a closed fist.

After being struck, William told Tomi he was going to the Mayor's Office in City Hall to file a complaint against her. Tomi, along with William's brother, Kenneth A. Ashton, Sr., followed him to City Hall. Upon arrival, William entered the building and asked to speak with Mayor Edward Fike while Kenneth and Tomi waited outside. William was informed that the Mayor was unavailable. Outside, Kenneth met and spoke with Jason Cox, Uniontown's Police Chief. He explained the events that transpired between his brother and Tomi. Chief Cox questioned Tomi regarding the incident, and she admitted striking William. Neither the City of Uniontown nor the police department further investigated the matter involving Tomi or disciplined her.

Subsequent to these events, but stemming from them, Kenneth and William were cited for and found guilty of violations of Pennsylvania state law. Kenneth was found

guilty of one count of disorderly conduct by use of obscene language or gesture, 18 Pa. Cons. Stat. § 5503(a)(3), and one count of harassment by following someone in or about a public place, 18 Pa. Cons. Stat. § 2709(a)(2). William was found guilty of driving with an improper class of license, 75 Pa. Cons. Stat. § 1504(a).

On June 11, 2010, Appellants filed in the District Court the Complaint naming as Defendants the City of Uniontown, Mayor Fike, Chief Cox, and meter maid Tomi. An Amended Complaint was later filed asserting: 1) § 1983 claims for violations of their First, Fourth, and Fourteenth Amendment rights, and 2) various state claims including assault, battery, abuse of process, intentional infliction of emotional distress, negligence, gross negligence, defamation, fraud, and civil conspiracy. On December 13, 2010, Defendants filed a Motion to Dismiss the Amended Complaint, which was referred to a U.S. Magistrate Judge for a Report and Recommendation. On February 11, 2011, the Magistrate Judge issued a Report and Recommendation. He recommended that the federal claims brought pursuant to 42 U.S.C § 1983 be dismissed and the District Court decline to exercise supplemental jurisdiction over the state claims. On March 11, 2011, the District Court granted the Motion to Dismiss, adopting the Report and Recommendation.

## II.

The Magistrate Judge issued the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The District Court reviewed the Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and our review of the District Court's grant of a motion to

dismiss is plenary. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250 (3d Cir. 1994)). In reviewing the lower court's decision, we must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse*, 132 F.3d at 906 (citations omitted). However, a court will not credit the "bald assertions" or "legal conclusions" of a complaint. *Id.*

III.

A.      First Amendment Claim

Appellants argue the District Court erred in dismissing their First Amendment retaliation claim because the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), which limits litigation of a civil rights claim arising from a conviction, does not apply here.[1]   (Appellants' Br. 10–13; Reply Br. 5–6.) Initially, a prima facie showing of First Amendment retaliation under 42 U.S.C. § 1983 requires a plaintiff to demonstrate:  1) a plaintiff engaged in speech protected by the First Amendment; 2) the government responded with retaliatory action that would cause a person of ordinary firmness not to exercise his First Amendment right; and 3) there is a causal link between the retaliation and the protected speech. *Thomas v. Independence*

---

[1] Appellants also claim the District Court should not have dismissed their claim because they established a prima facie showing of First Amendment retaliation. Because the *Heck* doctrine bars their claim, we will not address this argument.

*Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). A plaintiff's right, however, to maintain a First Amendment retaliation action is not absolute. *See Heck*, 512 U.S. at 486–87. In *Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005), we explained that, under *Heck*, "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." *Gilles*, 427 F.3d at 208–09.

Appellants allege that on June 12, 2008, they engaged in protected activity under the First Amendment when they discussed with meter maid Tomi and then with Chief Cox the conduct of Tomi in striking William and issuing him a ticket. (Appellants' Br. 12; App. II 13 ¶ 34.) They further claim that Tomi retaliated against them by making false statements "to [the] police, the district attorney and others" (Appellants' Br. 12; App. II 13, 14 ¶¶ 35, 40) and that Chief Cox retaliated against them by: 1) refusing to investigate Tomi's conduct; 2) refusing to discipline Tomi; and 3) making false statements "to [the] police, the district attorney and others." (Appellants' Br. 12; App. II 13–14 ¶¶ 36–40.)

As noted previously, Appellants were charged with and convicted of state crimes arising from the events of June 12, 2008. Kenneth was found guilty of disorderly conduct and harassment. (App. II 26–33.) William was found guilty of use of an improper class of license. (App. II 34–36.) We must decide whether permitting Appellants' First Amendment claim to proceed in this case would impugn the validity of Appellants' convictions. Here, Kenneth's First Amendment retaliation claim fails because his convictions for disorderly conduct and harassment arise from his actions

5

outside of City Hall and are barred by *Heck* and *Gilles*. In *Gilles,* the appellant's preaching enraged bystanders, which caused authorities to cite him for disorderly conduct. The appellant later filed a § 1983 action, alleging the infringement of his First Amendment right. We held that *Heck* barred the appellant's claim because it would create "parallel litigation over whether [the appellant's] activity constituted disorderly conduct and could result in a conflicting resolution arising from the same conduct." *Gilles*, 427 F.3d at 209. Similarly here, Kenneth's disorderly conduct and harassment convictions arise from his conduct on June 12, 2008. Though we do not know the precise behavior underlying these convictions, the record establishes that Kenneth went to City Hall with Tomi to complain about her conduct. On the same day, he was cited for disorderly conduct and harassment. The only logical conclusion from these facts is that his convictions arise from the June 12, 2008 events. Because we would have to decide whether William's conduct on June 12, 2008 constitutes protected activity under the First Amendment, permitting his claim to proceed would necessarily impugn the validity of his underlying convictions for disorderly conduct and harassment.

Likewise, William's First Amendment retaliation claim is barred by the *Heck* doctrine and *Gilles*. William alleges Tomi and Cox retaliated against him by making false statements "to [the] police, the district attorney and others" and by refusing to investigate or discipline Tomi, presumably believing her version of the events over that of William. For the First Amendment retaliation claim to be barred by the *Heck* doctrine, the alleged false statements must impugn William's conviction. William has not pled with any specificity the substance of these false statements nor any fact warranting an

6

inference that the statements were unrelated to the June 12, 2008 events. Therefore, after careful review of the record and based on William's allegation that these false statements were made "to [the] police, the district attorney and others," it logically follows that the statements made by Tomi and Cox relate to the incident of June 12, 2008. Because William's conviction for driving with an improper class of license also stems from the June 12, 2008 events, if we were to hear the claim, we necessarily would have to decide whether William's conviction was valid or was an act of retaliation. Permitting William to proceed with his First Amendment retaliation claim would impugn the validity of his underlying conviction because both the conviction and First Amendment retaliation claim are based in part on the alleged "false statements."

Accordingly, we will affirm the District Court's dismissal of Appellants' First Amendment retaliation claim.

B.      Excessive Force Under the Fourth and Fourteenth Amendments

William contests the District Court's dismissal of his excessive force claims. The Fourth Amendment protects a person from being subjected to unreasonable seizure by the authorities. To state a claim for unreasonable seizure under the Fourth Amendment, a plaintiff must show: 1) that a seizure occurred and 2) that the seizure was unreasonable. *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (quoting *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002)). Force which is excessive and unreasonable may rise to the level of a seizure. *See Abraham v. Raso*, 183 F.3d 279, 287–88 (3d Cir. 1999). Therefore, when an officer restrains a person from walking away freely, a seizure may occur. *Rivas*, 365 F.3d at 198.

7

If a plaintiff cannot establish a Fourth Amendment seizure, a substantive due process analysis is applied to the same factual averments. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The substantive due process prong of the Fourteenth Amendment protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* To establish a substantive due process claim, a plaintiff must demonstrate: 1) an actor engaged in conduct under color of state law; 2) a deprivation of a protected liberty interest by that conduct; and 3) the deprivation shocks the conscience. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). We have consistently held that only the most egregious official conduct shocks the conscience. *Id.* (quoting *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)).

Here, William argues first that he has alleged sufficiently the use of excessive and unreasonable force under the Fourth Amendment resulting in a seizure because a seizure occurs whenever a government actor terminates an individual's ability to move freely. He contends that when Tomi struck him on the back with a closed fist, it thwarted his freedom of movement and thereby constituted a seizure. (Appellants' Br. 15–16.) Accepting William's allegations as true, he fails to demonstrate that this act rises to the level of a seizure because his movement was not occluded. In fact, William remained free to walk to City Hall, which he promptly did following the incident. Accordingly, the act alleged is not the type of force required to be present to constitute a seizure. *Compare Abraham*, 183 F.3d at 288 (finding the plaintiff was "seized" after being shot), *with Gottlieb v. Laurel Highlands Reg'l. Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (finding

8

a student was not seized after a public school teacher allegedly pushed the student into a doorknob).

Because William did not establish that he was seized as required for a Fourth Amendment violation, his excessive force claim is then subject to a substantive due process analysis. *See Gottlieb*, 272 F.3d at 171–72. William argues that he alleged sufficient facts to satisfy the shocks the conscience standard.[2] (Appellants' Br. 18.) Our decision in *Gottlieb* shows that under this standard, the burden on a plaintiff is quite high. There, we held that a teacher shoving a student into a doorjamb did not rise to the level of conscience shocking behavior despite the student's alleged chronic pains following the incident. *Gottlieb*, 272 F.3d at 175. Similarly, in *Cummings v. McIntire*, 271 F.3d 341 (1st Cir. 2001), the First Circuit did not find conscience shocking behavior when a police officer, who was directing traffic, pushed the appellant and yelled at him, resulting in the appellant suffering a stabbing pain and permanent injury. *Cummings*, 271 F.3d at 346–47.

---

[2] The parties do not dispute the existence of the first two elements of the substantive due process claim:  1) action under color of state law and 2) the presence of a liberty interest. Even if these elements were challenged, our case law supports a finding of these elements. Regarding the element of acting under color of state law, because Tomi was working as a Uniontown meter maid, she was acting under color of state law. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (citations omitted) (finding that a person may be found a state actor when she is a state official, obtains significant aid from state officials or her actions are chargeable to the state). As to the protected interest element, William alleges violation of his Fourth Amendment right to be free from excessive force, which is encompassed in the firmly established liberty interest in one's bodily integrity. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 847–49 (1992) (citations omitted).

William alleges that Tomi struck him once in the back with a closed fist. Accepting this allegation as true, Tomi's response to William mounting his motorcycle, while inappropriate, does not rise to conscience shocking behavior. Moreover, William has not alleged any ongoing pain or injury. Here, Tomi's action is more akin to the actions of appellees in *Gottlieb* and *Cummings*. Accordingly, we will affirm the District Court's dismissal of Appellant William Ashton's excessive force claims under the Fourth and Fourteenth Amendments.

C.     Federal Civil Conspiracy Claims

Appellants also argue the District Court erred in dismissing their federal civil conspiracy claim pursuant to 42 U.S.C § 1983.

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federal protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999), superseded by statute on other grounds as stated in *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009).

To satisfy these elements at the motion to dismiss stage, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). We do not subject conspiracy claims to a heightened standard of pleading. *See Jones v. Bock*, 549 U.S. 199, 224 (2007). However, the complaint must provide some factual basis to support a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). After *Iqbal*, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"

are insufficient to defeat a Rule 12(b)(6) motion to dismiss. *Id*. at 1949; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Accepting Appellants' allegations as true, Appellants fail to meet this standard.

Here, Appellants' Amended Complaint does not explicitly plead a § 1983 civil conspiracy claim. (*See* App. II 16–22.) Instead, a federal conspiracy claim may be gleaned from one sentence in the Amended Complaint: "The actions of all the Defendants, acting in concert and conspiracy, as outlined herein, amount to an abuse of official power that shocks the conscience." (App. II 22 ¶ 83.) Appellants' conspiracy claim brought under 42 U.S.C. § 1983 fails because the Amended Complaint is devoid of any factual allegation showing an agreement or concerted activity by Tomi, Cox or Mayor Fike, a necessary element of a conspiracy claim. At best, the allegations show that the three Defendants acted independently of each other. No inference of an agreement arises from the facts. Furthermore, since we have concluded that the federal civil rights claims which are the object of the conspiracy must be dismissed, the alleged conspiracy to violate federal civil rights must also be dismissed because no federally protected right exists that is the object of the conspiracy. Thus, one element of a conspiracy cause of action has not been satisfied. Accordingly, we cannot conclude that the District Court erred in dismissing the civil conspiracy claim arising under § 1983.

D.    Supplemental Jurisdiction over Appellants' State Claims

Further, the District Court correctly refused to exercise supplemental jurisdiction over the state civil conspiracy claim and remaining state law claims. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district

11

court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Here, original jurisdiction is based on Appellants' First Amendment retaliation, excessive force under the Fourth and Fourteenth Amendments, and federal civil conspiracy claims, which were properly dismissed before trial. Appellants have not alleged facts showing that judicial economy, convenience and fairness to the parties would warrant the state law claims remaining in federal court. Accordingly, the District Court did not err in declining to exercise supplemental jurisdiction over them.

IV.

For the foregoing reasons, we will affirm the District Court's order.