**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 17-1950

————————

BRIAN BETZ, as parent and legal guardian of I.B. a minor;
DEBORAH BETZ, as parent and legal guardian of I.B., a minor,
Appellants
v.

ABBE SATTESON;
SHIKELLAMY SCHOOL DISTRICT;
PATRICK KELLEY; ERNIE JACKSON

——————————————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-15-cv-00851)
District Judge: Honorable Matthew W. Brann

——————————————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 14, 2017

Before: AMBRO, KRAUSE, and RENDELL, Circuit Judges

(Opinion filed: November 16, 2017)

OPINION*

————————

KRAUSE, Circuit Judge

_____

 * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Brian and Deborah Betz appeal the District Court's grant of summary judgment against them on their constitutional and state law claims arising out of an altercation between their minor son I.B. and Abbe Satteson, a teacher at I.B.'s middle school. Although we are troubled by the inappropriately caustic and derogatory tone of the District Court's opinion,[1] we perceive no legal error in the Court's ruling and therefore will affirm.

## I.     Background[2]

The events here took place on a Friday in late February 2014 at Shikellamy Middle School, where I.B. was a seventh-grade student and Satteson an eighth-grade math teacher of thirteen years' experience. That afternoon, after the final school bell rang, Satteson intercepted another student, M.E., riding a scooter down a ramp in the school's hallway in violation of school rules. As Satteson stopped the student to have him walk down the hall appropriately, she came across I.B. and two other students who were headed toward the school's exit. In what he later described as "a joke," App. 375, I.B. put his arm up "in front of Ms. Satteson," App. 24, and said "Go! Go! You're free to go!" App. 28. M.E. walked out of the building and I.B. tried to follow, but he was

---

[1] The District Court here issued a 125-page opinion peppered with gratuitous and disparaging remarks about Appellants and their child. Those entrusted with the solemn duties of judicial office are expected to handle proceedings in a manner that reflects the appearance as well as the reality of even-handed justice and respect for the litigants as well as for the law.

[2] Except as otherwise noted, this background is drawn from the District Court's recitation of facts, to the extent undisputed.

stopped short of the door by Satteson and by another teacher, Jessica Knopp. After a brief exchange, I.B. said he needed to leave, Knopp told him that he did not have permission to do so, and I.B. attempted to leave by moving toward the door. At that point, Satteson stepped in front of the door with her arm up. In his deposition testimony, I.B. explained that, in an attempt to "go under her elbow, or . . . arm," he "ducked [his] head," collided with Satteson's elbow, hips, and ribcage, App. 385, 388, and then crashed into the door, hitting his head and bleeding profusely. Satteson immediately brought I.B. to the office of the school nurse, who cleaned and bandaged his head. I.B.'s mother, Deborah Betz, later took him to the hospital, where he received nine staples to close the wound.

Based on this incident, I.B.'s parents filed a complaint against Satteson and the other defendants in the Middle District of Pennsylvania, alleging substantive due process violations and state law torts of assault, battery, and intentional infliction of emotional distress. After extensive discovery, Defendants moved for summary judgment. To supplement the briefing on that motion, the District Court ordered that the Defendants submit to the Court any surveillance footage that existed of the incident, which they did. The District Court then granted summary judgment, and this appeal followed. On appeal, Appellants challenge only the grant of summary judgment in Satteson's favor on the substantive due process and state law assault and battery claims. They do not appeal the orders as to Shikellamy School District and the other named defendants. Nor do they

3

appeal the order granting summary judgment in favor of Satteson on the intentional infliction of emotional distress claim.

## II.    Standard of Review

We review the District Court's grant of summary judgment de novo. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015). Summary judgment is appropriate where the moving party has established that "there are no genuine issues of material fact" and, viewing the facts in the light most favorable to the non-moving party, "the moving party is entitled to judgment as a matter of law." *Massie v. U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 340, 347 (3d Cir. 2010) (citing Fed. R. Civ. P. 56(c)). "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit . . . . A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 328 (3d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986)). We may affirm the District Court on any ground supported by the record. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 489 (3d Cir. 2017).

## III.    Discussion

On appeal, Appellants contend that the District Court (1) misapplied the standard of review on summary judgment, (2) erred as a matter of law by holding that Satteson was entitled to qualified immunity on the federal claim, and (3) erred as a matter of law by granting governmental immunity to Satteson under Pennsylvania's Political Subdivision Tort Claims Act. Because we conclude that Appellants failed to establish a

genuine dispute of material fact with respect to the underlying constitutional due process claim and state tort claims, we need not reach the immunity issues.

### A.     Substantive Due Process Claim

"'The substantive component of the due process clause is violated by [state conduct] when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (alteration in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  For claims based on "excessive force in public schools," our Circuit has adopted a four-part test that asks "a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?" *Id.* at 173.  Here, the District Court held that, with the exception of "serious injury," a reasonable jury could not have found that Appellants met any of the test's elements.  On this record, there is ample reason to affirm.[3]

---

[3] Appellants take issue with the District Court statement that video evidence recorded by a school surveillance camera "clearly shows I.B. initiating physical contact with Ms. Satteson by holding her back with his left arm" and "bending his body in an angular fashion and throwing the weight of his hips and his body against her so as to block her from reaching the exit," App. 25, arguing that the District Court "relied heavily" on this video to "weigh evidence, assess credibility, and resolve all contested material facts and inferences against Plaintiff." Appellants' Br. 8.  While courts may review video evidence at summary judgment, they must, as with any other kind of evidence at summary judgment, be careful to "set forth the facts in the light most favorable" to the nonmoving party.  *Young v. Martin*, 801 F.3d 172, 174 n.2, 180 (3d Cir.

We noted in *Gottlieb* that the third factor is dispositive: "[A] constitutional violation will only arise if [the defendant's] actions were malicious and sadistic." 272 F.3d at 175. We further explained that "it is the harm, and not the contact, that must be intended." *Id.* In another school-discipline case, we held that a jury could reasonably find that "restraints employed" by a teacher "exceeded the degree of force needed to correct [the student's] alleged breach of discipline" where the teacher "intentionally placed his arms around [the student's] neck and shoulders" and created "pressure on the underneath portion of the chin" so that the student "had to stand up on his toes," ultimately causing the student to lose consciousness. *Metzger ex rel. Metzger v. Osbeck*, 841 F.2d 518, 519-21 (3d Cir. 1988). While I.B.'s injuries were serious and unfortunate, we see nothing in the record that could allow a reasonable jury to conclude that Satteson's actions met the standard of intentionality established by *Gottlieb* and *Metzger*.

As evidence of ill intent, Appellants point to the physical contact and subsequent injury, as well as to the testimony of two classmates that Satteson "shoved" or "hit" I.B., Appellants' Br. 25. That Satteson made contact with I.B.—even if it was intended—falls

---

2015) (reversing summary judgment based on "our independent review of the videotape and record evidence," which allowed us to conclude "that the District Court failed to draw all reasonable inferences in [the appellant's] favor"). Here, we agree with Appellants that the "still images from the surveillance" video that the District Court included in its opinion cannot be fairly characterized as the District Court described them in its opinion. Nevertheless, the District Court noted that even "I.B.'s recounting of events . . . taken in the light most favorable to him" was insufficient to survive summary judgment. App. 42. Because we agree that the record, regardless of the disputed video, is insufficient to create a genuine dispute of material fact, we will affirm notwithstanding the District Court's incorrect and intemperate characterization of the video.

well short here of the requisite "malicious and sadistic" intent to harm, *Gottlieb*, 272 F.3d at 175. As the District Court observed:

> No witness testified that Ms. Satteson raised her voice or used foul language toward I.B. She did not reach out and grab his clothing. Neither did she put out her arms and forcefully push him. Her conduct was consistent with blocking a door to prevent the student's exit without permission . . . .

App. 80. Indeed, I.B.'s own testimony was that he was "looking [down] at the ground" when he collided with Satteson because he had "ducked [his] head" in an attempt "to go under [her] arm." App. 385, 388-89. Thus, I.B.'s testimony is entirely consistent with Satteson merely attempting to prevent I.B. from escaping through the door that she was blocking and does not suggest any intent to cause injury.

Based on the record before us, we agree with the District Court that a reasonable jury could not conclude that Satteson intended to injure I.B.—only that she attempted to prevent him from leaving the school. Because Appellants failed to sustain their burden on this dispositive question, we need not reach the other prongs of the *Gottlieb* test to conclude that no reasonable jury could have found a constitutional violation here. For that reason, we will affirm the District Court's dismissal of Appellants' substantive due process claim.

## B.     State Law Tort Claims

Appellants argue that the District Court erred by granting summary judgment in favor of Appellees on claims of state law assault and battery. In Pennsylvania, an "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a

7

battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). Both assault and battery require a mens rea of intent to cause harmful or offensive contact. *See id.* For the reasons described above, while Appellants' evidence may have created a genuine dispute as to whether Satteson intended to and did make contact with I.B., it was not sufficient to create a genuine dispute as to whether Satteson intended to harm him.

\*        \*        \*

For the above-stated reasons, Appellees were entitled to summary judgment, and we will affirm the judgment of the District Court.